THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT E. LEE, JR., Defendant-Appellant.

Second District (1st Division)   No. 75-290

Opinion filed November 17, 1976.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellant.

John J. Bowman, State's Attorney, of Wheaton (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This is a post-conviction appeal after an evidentiary hearing at the trial court. The direct appeal of the defendant's conviction of murder was affirmed by this court in *People v. Lee* (1972), 7 Ill. App. 3d 320, 287 N.E.2d 191.

In this post-conviction appeal defendant contends that the trial court erred because the defendant established, by a preponderance of the evidence, that trial counsel was incompetent and, secondly, that the defendant established, by a preponderance of evidence, that there was a *bona fide* doubt of his fitness to stand trial. The basis for these contentions is that the Du Page County Public Defender's office, representing the defendant at trial, was incompetent because the public defender failed to raise the issue of the defendant's fitness to stand trial or the possibility of an insanity defense when trial counsel admitted he was aware of at least a part of the defendant's records relating to his mental problems, to-wit: the fact that Lee had an extensive history of diagnosed psychosis, violent behavior, chronic alcoholism and memory lapses. It is to be noted that the trial court was given a presentence report containing references to defendant's treatment in mental hospitals. Defendant also contends these reports should have created a *bona fide* doubt in the mind of the court as to defendant's fitness to stand trial or be sentenced. Defendant has cited a number of cases in support of this contention which we do not find to be dispositive of the factual issue herein involved. It is also to be noted that the issue of defendant's fitness to stand trial was not raised in the direct appeal of this defendant. See *People v. Lee*.

Inasmuch as the above contentions were so closely intertwined, *viz.* a failure of defense counsel to raise the possible defense of insanity at the time of the crime and the alleged incompetency to stand trial, thus indicating in defendant's mind the incompetency of counsel, we shall treat the contentions together. Examination of the record of the post-conviction hearing in the trial court discloses that the defendant filed a number of documents pertaining to his alleged mental incapacity. On December 26, 1961, a petition for commitment of the defendant, either as a person in need of mental treatment or a mentally ill person, was filed by his mother, supported by an examining physician's certificate finding him to be suffering from schizophrenia " * * * manifested by his inability to maintain interest in any job, a poor work record, instances of destructive behavior while under the influence of alcohol (window breaking in school), and a complete lack of comprehension of his responsibility to his

family, society and himself. His behavior and habits are erratic. He sleeps days and stays up nights and earns money playing pool. Physical health is good." Three days later, on December 29, 1961, the defendant appeared before a mental health commission which found "no evidence of psychosis at time of present examination. Discharged." On March 10, 1962, after defendant had been arrested in a drunken condition in downtown Elgin, his mother again signed a petition for commitment supported by two examining physicians' certificates. One physician stated in part:

"Patient refuses to work and admits he is a 'Bum'. He drinks heavily when money is available. He shows lack of sense of responsibility, lack of judgment and an antisocial reaction."

The other physician's certificate, in part, states:

"Patient admits to overindulgence in alcohol whenever the occasion presents itself, refused to work and indicates an antisocial reaction. Impression: Sociopathic Personality disturbance with chronic alcoholism."

Defendant was admitted to the Elgin State Hospital on or about March 15, 1962, and on March 31, 1962, was given an "Absolute Discharge * * * WITHOUT PSYCHOSIS."

On August 8, 1965, the defendant went to the Mercyville Sanitarium in Aurora, Illinois, where he was examined by Dr. Donald H. Engels. Dr. Engels' diagnosis was "Anti-social personality" or "Antisocial Reaction." However, the doctor stated:

"This patient is considered to be a definite potential homicidal risk, unless the above [legal voluntary commitment] can be accomplished his ultimate fate will probably be life imprisonment or death from police or other intervention."

The records indicate that the defendant was treated as an outpatient.

On July 24, 1970, the defendant was a walk-in patient at the Janet Wattles Mental Health Center in Rockford. Dr. Chester Wade examined him at that time and his impression was:

"1) unstable personality with dissociative aspects
2) alcoholism mod chronic."

His recommendation was that he be referred to an alcoholic program. A Mr. Sabo, a psychologist from the Wattles Center, who testified at the post-conviction hearing, stated that the defendant was a schizophrenic, latent type, and was suffering from alcoholic addiction.

Defendant was admitted to Elgin State Hospital on August 8, 1970, again as the result of alcoholic episodes. Defendant's mother filed a petition for emergency admission of the defendant, apparently on August 13, 1970. He was examined by Dr. Flores on August 10, who stated:

"For practical purposes he is not psychotic.

\* \* \*

Impression: 303.2 Alcoholic Addiction.

Recommendations: The patient is not in need of continued hospitalization. He should be discharged as soon as possible."

He was also examined on August 11th by Dr. Stiller whose diagnostic impression was "Schizophrenic reaction with symptomatic alcoholism." At the hearing before the circuit court of Kane County on August 14, four days later, the court found that "Robert Lee, Jr. #5, the patient, is not a person in need of mental treatment" and ordered the case dismissed. From an examination of the above record it is obvious that there was no finding of mental illness by the court commission for determination of mental illness or need of mental treatment, or by either of the two doctors who examined him as an outpatient at Mercyville or at the Wattles Clinic. It is also to be noted that all of these episodes took place five years before the instant offense was committed. Even though defendant's wife testified that he did not have an alcoholic problem, we reach the inescapable conclusion that the defendant was an alcoholic.

■■ We turn first to the contention of the defendant that the above reports should have created a *bona fide* doubt in the mind of the court as to defendant's fitness to stand trial or be sentenced as the court had been given a presentence report indicating references to defendant's treatment in a mental hospital. In *People v. Plecko* (1970), 46 Ill. 2d 301, 302-03, 263 N.E.2d 66, 68, the Supreme Court has stated:

"It is well established that the trial court must order a sanity hearing to determine a defendant's competency to stand trial when facts are brought to the attention of the court which raise a *bona fide* doubt of defendant's present sanity [citations], and this obligation is not necessarily avoided because a defendant has failed to raise the issue."

The court then went on to find that the psychiatric reports which two doctors had made about the defendant justified the trial court's conclusion that there was no *bona fide* doubt of defendant's competence to stand trial. We find the same situation to prevail here. Nothing in the record discloses any indication that the defendant was not competent to stand trial.

■■■ In *People v. Hammond* (1970), 45 Ill. 2d 269, 276-77, 259 N.E.2d 44, 47, it was contended that a *bona fide* doubt of defendant's competency was manifest from the record and should have been recognized by the trial court. The court stated, in quoting from *Withers v. People* (1961), 23 Ill. 2d 131, 177 N.E.2d 203:

" 'The test to be applied in determining whether a defendant has the mental capacity to stand trial is whether he understands the

nature and object of the charges against him and can, in cooperation with his counsel, conduct his defense in a rational and reasonable manner. [Citations.] If the defendant does understand the nature and object of the charges against him and can, in cooperation with his counsel, conduct his defense in a rational and reasonable manner, then he is mentally competent to stand trial although upon other subjects his mind may be unsound.' (23 Ill. 2d at 135; see also Ill. Rev. Stat. 1967, ch. 38, par. 104—1.) The record in this case does not, in our judgment, raise a *bona fide* doubt of defendant's competency under the foregoing principles. *While a defendant may possess a sociopathic personality and suffer from psychiatric and social disturbances, these circumstances, without more, are not sufficient to raise a bona fide doubt as to his competency."* (Emphasis added.)

We turn then to the contention of the defendant that his trial counsel was incompetent in the first instance for failure to raise the fitness of the defendant to stand trial. A portion of the above information as to defendant's commitment to Elgin State Hospital was made available to defense counsel prior to trial, and at the post-conviction hearing trial counsel so indicated. Trial counsel further stated at the post-conviction hearing that he had talked to the wife of the defendant who had advised him that the defendant had threatened her life at various times. As pointed out above, none of the records before us indicate that the defendant was, in fact, legally incompetent to the point where he did not understand the nature of the charge or where he was unable to cooperate with his counsel at trial. Indeed, the defendant took an active part in his defense, discussed it with defense counsel and agreed that because of certain physical injuries sustained by the defendant, the appropriate defense would be self-defense. Defendant actively participated at the conference on jury instructions when he told his attorney not to tender a manslaughter instruction. Defendant made this decision after his attorney explained that if the instruction were given and the jury found that he had acted upon an unreasonable belief that he was in danger of great bodily harm then the verdict would be manslaughter. However, the manslaughter instruction was given as the court's instruction. Also, the defendant testified in detail as to what transpired on the night of the killing and further testified that he acted in self-defense. The defendant suggested to trial counsel some possible avenues of cross-examination of witnesses and during the trial the defendant made notes which were given to trial counsel. Additionally, defendant conferred with trial counsel as to the use of peremptory challenges. Further, during the trial, petitioner explained to defense counsel the difference between a luballoy bullet and another type of cartridge found in his vehicle. It thus appears that even

though trial counsel was conversant with a commitment of the defendant for alcoholism there was no reason for him to believe that the defendant was incompetent at the time of the offense, and certainly not at the time of the trial where the defendant was an active and intelligent participant in his own defense. It is obvious that the defense relied upon by the defendant was that of self-defense and not insanity, nor was this issue raised in the direct appeal. Only upon the post-conviction hearing did the defendant resort to the possible mental incompetence of himself at the time of the commission of the offense or at the time of trial.

■■ ■ In view of the above it is obvious that the trial strategy of defense counsel was that of self-defense, even though he had been advised of the alcoholic addiction of the defendant and his commitment to the Elgin State Hospital. It is also obvious that there was no indication to defense counsel that the defendant was incompetent either at the time of trial or at the commission of the offense. It is also to be noted that there was no evidence of any examination or commitment of the defendant for a period of five years prior to the time of the murder herein. In *People v. Heirens* (1954), 4 Ill. 2d 131, 143-44, 122 N.E.2d 231, 238, it was there contended that the trial counsel should have advised a defense of insanity. The court stated:

> "Insanity is a defense to be asserted at the trial as any other defense; and the decision not to advise such a defense, even if it were a mistake, does not of itself show that the defendant was inadequately represented. Mistakes of counsel will not amount to a denial of due process unless on the whole representation is of such low caliber as to be equivalent to be no representation at all, and to reduce the proceedings to a farce or a sham."

See also *People v. Torres* (1973), 54 Ill. 2d 384, 391, 297 N.E.2d 142, 146; *People v. Schott* (1976), 39 Ill. App. 3d 266, 350 N.E.2d 49.

At the post-conviction hearing at which the defendant was present, the trial judge found that the defendant did not create a *bona fide* doubt as to his competency at trial. The trial judge further found that trial counsel was a competent attorney with considerable experience in criminal matters and that nothing in the record indicated that the defendant was not properly represented by trial counsel. We concur in that finding and further find no constitutional rights of the defendant have been denied to him. The record fails to show any evidence that defendant was insane at the time of the commission of the offense herein or at trial. The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

T. J. MORAN and SEIDENFELD, JJ., concur.