THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LOUISE ELLA HOWARD, Defendant-Appellant.

Third District   No. 77-536

Opinion filed July 19, 1979.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin, and Rita Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:

The defendant, Louise Ella Howard, was convicted of aggravated

battery after a jury trial in Kankakee County. She was sentenced to a prison term of not less than one year or more than three years. On appeal she has alleged that her court-appointed public defender's failure to adequately investigate her psychiatric history resulted in denying her effective assistance of counsel.

The defendant was convicted of aggravated battery for allegedly causing bodily harm while armed with a knife to one Pearl L. Smith by striking her in the back on July 16, 1977. The attack occurred at a Salvation Army store and was unprovoked. The victim testified that she did not previously know the defendant. The defendant merely walked away after the attack and was followed by the victim. After the attack the victim telephoned the police and defendant was arrested about four blocks from the store. At that time she was incoherent and said she did not remember doing anything. Although the victim never saw the weapon used in the attack, a blood stained knife was found in defendant's purse after her arrest.

Prior to trial a petition for a competency hearing was filed by the public defender. Pursuant to a defense request a psychiatrist, Dr. V. Janevicius, was appointed to examine the defendant. Two separate competency hearings were conducted. The result of each was a finding that the defendant was competent to stand trial.

At the first competency hearing on September 19, 1977, the State presented as its only evidence Dr. Janevicius' report which was prepared after he had examined the defendant for a day. His report recited that it was based upon his personal examination of the defendant and of her medical records and history. The significant portion of his report, the concluding two paragraphs thereof is reproduced below:

> "In summary, this is a twenty-six year old woman with very poor background and history of delinquency in early adolescence with two illegitimate child births at the age of 14-15. She apparently never learned or was taught any responsibility or trade and made her living being supported by welfare and manipulating others for her own benefit. It was not unusual that she was picked up on a few occasions and placed in mental institutions where she was never found mentally ill or incompetent and was discharged after short stay.
>
> In conclusion, the undersigned finds Ms. Louise Ella Howard free from any disabling mental discorder [sic]. She is basically passive-aggressive person with many sociopathic features and should be held fully responsible for her acts. She may present some difficulties in cooperating with the Court and her counsel but this should be considered as a product of her passive-resistant attitudes rather than mental incompetency."

The defendant was the only witness to testify at this first competency hearing. The relevant portion of her testimony contained her own account of her past psychiatric history. Her testimony was incomplete and confused on the subject of her past psychiatric treatment as compared with an actual detailed summary of her past treatment and stays at various mental health institutions. The trial court, relying upon, Dr. Janevicius' report, found the defendant competent. Thereafter defendant's counsel filed a motion to reconsider the defendant's competency and a second hearing, to reconsider her competency, was held on October 11, 1977. This second hearing concluded with the trial court again determining the defendant was competent to stand trial. At the second hearing the defendant again testified and for the first time mentioned briefly in passing that she had been in Madden Mental Health Zone (referring to J.J. Madden Zone Center).

The case proceeded to trial with testimony of the victim and the investigating police officers comprising the State's case in chief. The defendant was the only witness for the defense. She testified only to the circumstances of her arrest and admitted being at the Salvation Army store where the incident had occurred. The defense offered a jury instruction on the defense of insanity which the court refused to give citing as his reason insufficient evidence in the record to raise such a defense.

After her conviction a presentence report was ordered and considered at the sentencing hearing. The presentence report, prepared by a probation officer, contained a discharge summary following the defendant's commitment to the J.J. Madden Zone Center for a period from February 26, 1974, to March 13, 1974. This hospitalization was the one very vaguely referred to by the defendant in her testimony at the second competency hearing on October 11, 1977. The defendant's treating physician at the J.J. Madden Zone Center revealed significant facts in his discharge summary of the defendant. This report stated that defendant was initially brought to the Madden Zone Center by the police and was admitted on a physician's certificate following aggravated assault charges against her resulting from her attempts to stab a woman. The treating doctor's report further contained the findings, "She expressed delusions of persecution * * *. Affect was flat, mood appeared depressed. She used much denial. Insight and judgment impaired." The provisional diagnosis at admission was "Schizophrenia, Paranoid State," while the final diagnosis at discharge was "PARANOID STATE." The reasons for defendant's discharge from the Madden Zone Center were set forth in the discharge summary as follows: "Patient was discharged as per court order, by Judge Genesen. She was released on an I bond, to the

custody of her mother, Mrs. Anderson, with several conditions." Her treating psychiatrist stated in the discharge summary that her prognosis was: "POOR—In my opinion this patient is dangerous to others. I do not consent to her discharge and such discharge is against my medical advice. I will not assume any further legal responsibility for this patient."

■■ The issue presented is whether the defendant's appointed counsel's failure to investigate and discover the medical records of the defendant's commitment at the J.J. Madden Zone Center in 1974 and to present them to the trial court amounted to incompetency sufficient to be categorized as ineffective assistance of counsel. In the recent case of *People v. Hills* (1979), 71 Ill. App. 3d 461, 467, 389 N.E.2d 873, 877, we recited the standard to be applied in determining the competency of appointed trial counsel, citing *People v. Goerger* (1972), 52 Ill. 2d 403, 288 N.E.2d 416: " 'In order to establish lack of competent representation at trial, it is necessary to demonstrate "actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney" which results in substantial prejudice without which the outcome would probably have been different.' 52 Ill. 2d 403, 409, 288 N.E.2d 416, 419." Applying this standard to the facts of the case at bar, we determine that the defendant's appointed counsel did not provide her with effective assistance of counsel. The record manifestly supports the conclusion that the trial court relied very heavily upon the psychiatric report of Dr. Janevicius in both of defendant's competency hearings. However, the additional data contained in the treating psychiatrist's report upon the defendant's discharge from J.J. Madden Zone Center contained evidence in contradiction of the findings and conclusions of Dr. Janevicius, who was not aware of the findings and conclusions of that discharge summary following defendant's commitment for her attack upon another woman. Had this additional evidence been timely presented to the trial court the outcome of the competency hearings may have been different. More importantly, the defendant's records were readily discovered by the probation officer at the sentencing hearing in his presentence report. The defendant was to a great extent uncooperative with her defense counsel, but her lack of cooperation should not excuse his failure to fully investigate and discover the defendant's relevant past psychiatric history, including all her commitments at various institutions. We emphasize that the Madden Zone Center records were found to be readily available to the probation officer and obviously equally available to defendant's appointed counsel. Defense counsel was present at the second competency hearing on October 11, 1977, when his client in testifying to her past psychiatric history and treatment mentioned her treatment at Madden Zone Center.

■ Of equal significance is the failure to introduce sufficient evidence at the trial to warrant the giving of a jury instruction on the defense of insanity. We agree with the trial court that the defendant failed to present sufficient evidence to raise the defense of insanity. The choice to not offer any evidence of this at the trial was one of trial tactics. Defendant's brief indicates the defense trial counsel communicated with defendant's appellate counsel and suggested that his reasons for not offering concrete evidence on the defense of insanity was a matter of trial tactics designed to prevent the defendant from having to admit the charged act. As was recently stated in *People v. Lee* (1976), 43 Ill. App. 3d 807, 812, 357 N.E.2d 652, 655 (quoting *People v. Heirens* (1954), 4 Ill. 2d 131, 143-44, 122 N.E.2d 231, 238), " 'Insanity is a defense to be asserted at the trial as any other defense; and the decision not to advise such a defense, even if it were a mistake, does not of itself show that the defendant was inadequately represented.' " We acknowledge the rule that matters related to trial tactics are not usually sufficient to establish ineffective assistance of trial counsel. (*People v. Griswold* (1977), 54 Ill. App. 3d 246, 369 N.E.2d 392; *People v. Gary* (1977), 49 Ill. App. 3d 704, 364 N.E.2d 726.) However, in the present case we cannot consider defendant's appointed counsel's trial tactics to be sound where he failed to fully investigate and therefore lacked a full and complete knowledge of his client's case. The record demonstrates that appointed trial counsel otherwise ably presented the defense case in the trial on the merits to the extent of his knowledge of the psychiatric background of his client. Had defense counsel been aware of the Madden Zone Center discharge report and its contents, his decision to forego any evidence on the defense of insanity at the trial would likely have been different. The ineffectiveness of counsel which we recognize in this case is defendant's appointed trial counsel's failure to discover the Madden Zone Center report, inadvertently or otherwise, and the resultant inability to use it effectively at both the competency hearings and the trial in chief. In any event his lack of use of the Madden Zone Center report at the competency hearing cannot possibly be justified by semantically labeling it as a trial tactic.

We believe that the failure of defendant's appointed trial counsel to discover and use the Madden Zone Center discharge summary of defendant severely prejudiced the outcome of the competency hearings and requires a reversal of the defendant's conviction. Those same failures of trial counsel to which we have alluded above in deciding this appeal and of which counsel is, by virtue of this opinion, now aware, may result in a different trial strategy for the defense upon remand and could result in a different outcome upon a new trial on the merits. Accordingly we order the defendant's conviction reversed and remand the case to the Circuit Court of Kankakee County to conduct another hearing to initially

determine the defendant's competency to stand trial, and further direct that if the defendant is found competent, for a new trial to be conducted.

Reversed and remanded with directions.

STENGEL and ALLOY, JJ., concur.