THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL MURPHY, Defendant-Appellant.

First District (3rd Division)   No. 84—1443

Opinion filed August 26, 1987.

Steven Clark and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Nandia P. Black, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant Paul Murphy and his brother, Wayne Murphy, were convicted of deviate sexual assault and aggravated kidnapping after a bench trial in the circuit court of Cook County. The trial court sen-

tenced defendant to concurrent terms of 12 years on each conviction. On appeal, he contends: (1) he was denied the effective assistance of counsel; (2) the trial court erred in finding him fit to stand trial; and (3) the conduct of the fitness hearing was improper.

Trial commenced in this cause on December 12, 1983. On that date, the arresting police officer and the victim testified for the State. Defendant was incarcerated in the Residential Treatment Unit (RTU) of the Cook County Department of Corrections (the Department). Sometime between December 12 and December 21, he attempted suicide. Thereafter, his trial counsel, an assistant public defender, moved for a behavioral clinic examination to determine defendant's fitness to stand trial. Dr. Gilbert Bogen, the first psychiatrist to examine defendant, found him unfit to stand trial on January 19, 1984. The second, Dr. Albert Stipes, found him fit for trial "with medication" on February 10. The trial court conducted a fitness hearing on April 9, 1984.

At the hearing, defendant's mother testified that he had been hospitalized in the psychiatric ward of the Long Beach, California, Veteran's Hospital for two years after slashing his wrists. After his release from that hospital, he took an "overdose" and was hospitalized in the psychiatric ward of the Hines Veteran's Hospital in Maywood, Illinois, for one year. Dr. Bogen testified that, according to defendant, he had saved an antidepressant drug being given him and medications being given other inmates in the RTU and then attempted suicide by consuming all of these medications together. After examining defendant, Dr. Bogen concluded that he could not cooperate as of the date of the examination with his counsel because of a major depression with suicidal potential. On cross-examination, Dr. Bogen admitted that a failure to take his medication properly could have affected defendant's mental condition on January 19. He also admitted defendant's mental condition could have been affected by his taking his medication properly between January 19 and February 10. He also admitted that he did not have any of defendant's medical records when he examined him, that he learned of defendant's past suicide attempts only from him, and that he did not know defendant's case had gone to trial when he attempted suicide in December.

Dr. Stipes testified for the State. He concluded, after examining the medical records of defendant's treatment at various Chicago area hospitals, that his suicide attempts resulted from anger and frustration and were at times "manipulative." He was of the opinion that the suicide attempt in December was the result of stress and defendant's life circumstances rather than the result of an "endogenous" de-

pression, which is biological in nature and has little to do with life circumstances. Dr. Stipes diagnosed defendant as suffering from a mixed personality disorder with features of "borderline and anti-social." He concluded defendant was "fit to stand trial with medication." On cross-examination, Dr. Stipes admitted that if defendant was not taking his medication in December it could have affected his fitness to stand trial at that time. He also admitted defendant could have been unfit when Dr. Bogen examined him in January if the medication prescribed for him after his suicide attempt had not gotten his mental problems under control by that time, in contrast to defendant's condition when he examined him.

When his trial counsel argued during closing argument that there was a *bona fide* doubt of defendant's fitness to stand trial when it commenced, the trial court asked whether he had received "any overt signs and lack of cooperation" and noted that he had not brought any to its attention. Trial counsel responded that he thought it was important that when he visited defendant it had been in the RTU of the Department. He further informed the court that when he visited defendant he had a few problems communicating with him "as to his defense" and that, after talking with Wayne Murphy, he realized there was a "problem" with defendant. When the court again noted that no problems were so serious that defense counsel brought them to its attention, defense counsel responded:

"Judge, I thought that after the State witness testified, Mr. Murphy *** would be able to communicate better with me as far as defense theory. ***

Judge, most of my information *** was gleaned through Mr. Wayne Murphy *** not [defendant] because my discussions with [him], Judge, were unfruitful. And maybe due to the fact that he was in the R.T.U. Unit and he was not taking his medication."

The trial court relied on the statutory presumption of fitness and its failure to observe, or of any party to bring to its attention, any evidence that defendant was unwilling or unable to cooperate with counsel during the earlier proceedings to find that he had been fit to stand trial when it commenced. The court found "totally speculative" the argument that when the trial began defendant was unfit because he had not been taking his medication. Relying on Dr. Stipes' testimony that defendant was fit "with medication" as more convincing than that of Dr. Bogen, it also found him fit to stand trial at the time of the hearing.

OPINION

Defendant first contends he was denied the effective assistance of counsel by his trial counsel's failure to investigate his mental condition or obtain records of his prior hospitalizations before his trial began and his suicide attempt. He relies on his trial counsel's admission that he visited defendant in the RTU but failed to inform the trial court of problems he had communicating with defendant. He also relies on the evidence which allegedly showed that the RTU was a special unit for persons with psychiatric problems. He urges us to hold that whenever defense counsel discovers that a client is housed in such a special psychiatric unit he should immediately investigate his mental condition and psychiatric history and inform the court if doubts of his fitness to stand trial result from that investigation. Defendant argues that his assignment to the RTU should have put his counsel on notice of potentially serious mental problems because inmates of the Department are not randomly assigned to such a unit. He argues that mentally disturbed clients cannot be relied upon to bring such matters to the attention of counsel on their own. It would be, defendant continues, no great burden on defense counsel to inquire at the unit why his client is assigned there, make a minimal investigation and apprise the court of the situation. Defendant concludes that assignment to such a unit virtually raises *ipso facto* a *bona fide* doubt of fitness.

Defendant cites *People v. Howard* (1979), 74 Ill. App. 3d 138, 392 N.E.2d 775, in support. Therein, the court held defense counsel incompetent for failing to investigate for and discover records of defendant's commitment to an Illinois mental institution. The court relied on the facts that defendant had mentioned the prior commitment at a pretrial competency hearing and that a probation officer had easily discovered the records prior to sentencing. It held that defense counsel's failure to discover the records and his resulting inability to use them at the competency hearing and at trial severely prejudiced the outcome of the hearing and required reversal of defendant's conviction.

Defendant argues that defense counsel's failure to investigate his mental condition and history meant that they made many decisions without the benefit of this information, including that to take a bench trial and to assert, with his brother, a joint "consent" defense to the charges. He also notes that the records of his treatment by various Chicago area hospitals were available to Dr. Stipes, but not Dr. Bogen, and that the records of his Long Beach, California, hospitalization were not available to either doctor. He argues that sufficient

prejudice has been shown in this case since proper investigation might have resulted in an insanity defense and a different trial result. He urges us to hold that a strong showing of prejudice is unnecessary in a case of this kind. He notes that in some sixth amendment contexts prejudice is presumed, so likely that a case-by-case inquiry is not worth the cost, or otherwise difficult to measure. (*Strickland v. Washington* (1984), 466 U.S. 668, 692, 80 L. Ed. 2d 674, 696, 104 S. Ct. 2052, 2067.) He notes that certain conduct in other contexts warrants reversal of a conviction without any prejudice to the defendant. (See *People v. Hill* (1980), 78 Ill. 2d 465, 401 N.E.2d 517 (conviction reversed despite overwhelming evidence where State informed jury of plea negotiations); *People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40 (conviction reversed where State took unauthorized pictures of defendant in jail although no use was made of them).) From these cases, he reasons that certain conduct may pose such a threat to the criminal justice system that it warrants automatic reversal as a deterrent to such conduct in the future.

The State responds that defense counsel's decision to proceed to trial after developing a comprehensive defense theory "primarily" from conversations with Wayne Murphy, while anticipating better communication with defendant later in the trial, was permissible trial strategy which did not prejudice defendant or deprive him of a fair trial. It draws the same conclusion as to the decision to proceed to trial before investigating defendant's mental condition. The State notes that: the constitution does not require a new trial for every defendant whose counsel errs at trial (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203); we must examine the record as a whole in analyzing defense counsel's performance (*People v. Martin* (1983), 112 Ill. App. 3d 486, 445 N.E.2d 795); and that errors in judgment or trial strategy do not establish ineffective assistance of counsel (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677).

The State counters defendant's arguments that his assignment to the RTU should have put defense counsel on notice of potentially serious mental problems and that such assignment alone virtually raised a *bona fide* doubt of fitness by asserting there is no evidence that the RTU is a special unit for persons with psychiatric problems. Moreover, it argues, that a defendant suffers from mental disturbances or requires psychiatric treatment or has had prior mental problems or commitments to a mental hospital does not *ipso facto* raise a *bona fide* doubt of fitness. (*People v. Kessler* (1983), 113 Ill. App. 3d 354, 447 N.E.2d 495; *People v. Jones* (1982), 109 Ill. App. 3d 120, 440 N.E.2d 261.) Because any investigations into defendant's mental his-

tory would not necessarily have raised a *bona fide* doubt of fitness, it reasons, the strategy of proceeding to trial without such investigation was proper, especially since there was nothing to put defense counsel on notice of any problems which could affect defendant's ability to assist in his defense.

The State distinguishes *Howard* on the facts. Unlike the situation in *Howard*, here no one, including defendant, ever informed defense counsel of his past hospitalizations, the defendant's records were not easily available to anyone, the evaluating psychiatrist reviewed the records, they were considered at the fitness hearing, and they agreed with the opinion of Dr. Stipes that defendant was antisocial. As such, the State concludes, the record as a whole reveals that defense counsel's failure to investigate and discover defendant's mental history records before trial did not constitute ineffective assistance of counsel.

The State further responds that a rule not requiring prejudice in this context would be contrary to the general requirement to which ineffectiveness claims are subject that prejudice must be affirmatively shown. (*Strickland v. Washington* (1984), 466 U.S. 668, 693, 80 L. Ed. 2d 674, 697, 104 S. Ct. 2052, 2067; *People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217.) It cites the admonitions in *Strickland* that: (1) judicial review of counsel's performance must be highly deferential; (2) a defendant must overcome the presumption that challenged action might be considered sound trial strategy; (3) attorney errors cannot be classified according to likelihood of causing prejudice; and (4) that a defendant must show that such errors, albeit unreasonable, actually and adversely affected the defense. (*Strickland v. Washington* (1984), 466 U.S. 668, 689, 693, 80 L. Ed. 2d 674, 694-95, 697, 104 S. Ct. 2052, 2065, 2067.) It concludes from them that a rule of automatic reversal in this context would adversely impact the defense of criminal cases.

Alternatively, the State argues, even assuming ineffective assistance here, defendant cannot make the required showing that it produced substantial prejudice without which the trial result would probably have been different (*People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203), in view of the overwhelming evidence against him. Finally, it notes that a claim of prejudice cannot be based on speculation or mere conjecture. *People v. Hills* (1980), 78 Ill. 2d 500, 505-06, 401 N.E.2d 523.

Replying to the State's argument that the record does not indicate the nature of the RTU, defendant cites as supplemental authority a report by the National Center for State Courts for the National In-

stitute of Justice of the United States Department of Justice. The report, entitled "Psychiatric Services, Correctional Complex, Cook County (Illinois)," "describes the process by which client-offenders are screened and evaluated for mental health services by the Psychiatric Services unit of the" Department. It states that: "Psychiatric Services accepts detainees who have psychotic symptoms; are suicidal; are in serious manic, depressive or toxic states; or present serious adjustment problems." It describes the RTU component of the Psychiatric Services unit as: "a 200 bed facility, for inmates who are treatable, not in acute states, but not able to function among the other jail inmates"; including two drug treatment dormitories; and "[t]he most visible function" of the unit. It further states the RTU is staffed by, *inter alia*, one part-time and one consulting psychiatrist, four psychologists and five mental health specialists. It describes the RTU intake process as including a psychiatric screening, close observation by the professional and correctional staffs, and the design of a treatment program including individual and group therapy as well as chemotherapy. From this report, defendant concludes it is clear that competent defense counsel with a client in the RTU should investigate why his client is assigned to that unit, because he has either a mental or drug problem or both.

■■ Under *Strickland*, a defendant alleging ineffective assistance of counsel must show that his counsel's performance was "deficient," *i.e.*, "that counsel made errors so serious that [he or she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that the deficient performance prejudiced the defense," *i.e.*, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) Our supreme court has stated that this standard would not yield results varying significantly from that formerly applied in Illinois: "actual incompetence which creates such substantial prejudice that the trial result would probably have been different." (*People v. Albanese* (1984), 104 Ill. 2d 504, 524-26, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) The *Howard* court applied the former standard to determine whether defense counsel's assistance was ineffective in that case. *People v. Howard* (1979), 74 Ill. App. 3d 138, 141, 392 N.E.2d 775.

We believe *Howard* is dispositive. Therein, the court determined that defense counsel's failure to discover and use defendant's psychiatric records severely prejudiced the outcome of the competency hearings and required a reversal of defendant's conviction. In so doing, it

noted that the outcome of the competency hearings might have been different had the data been timely presented to the trial court. It also held the fact that "defendant was to a great extent uncooperative with her defense counsel *** should not excuse his failure to fully investigate and discover" her past psychiatric history. It emphasized that the records were "readily available to the probation officer and obviously equally available" to defense counsel. The court found defense counsel's failure to offer any concrete evidence on an insanity defense at trial because of his failure to investigate defendant's mental history as egregious as his failure to discover her psychiatric records. Rejecting his claim that this failure was a matter of trial tactics, it stated: "[W]e cannot consider [defense counsel's] trial tactics to be sound where he failed to fully investigate and therefore lacked a full and complete knowledge of his client's case." It reasoned that his decision to forego any evidence on an insanity defense would likely have been different had he been aware of the records. Finally, it concluded that defense counsel's failure to use the records at the competency hearing could not be justified as a trial tactic. 74 Ill. App. 3d 138, 141-42, 392 N.E.2d 775.

▉ ▉ As in *Howard*, defense counsel here had sufficient facts within his knowledge, albeit not as explicit, to warrant some investigation into defendant's psychiatric history. Defense counsel did not tell the court why he thought it "important" that defendant was assigned to the RTU. However, that he did think it was important, that he had difficulty communicating with defendant and that he concluded, after speaking with defendant's brother, that defendant had a "problem," all require the conclusion that he had sufficient reason to suspect that defendant might not be fit to stand trial. As such, we believe defense counsel was required to investigate, at minimum, the nature of defendant's immediately perceptible problems and, if warranted by that investigation, to investigate his psychiatric history in depth. Defense counsel has a duty to make reasonable investigations or to make reasonable decisions that make particular investigations unnecessary. (*Strickland v. Washington* (1984), 466 U.S. 668, 691, 80 L. Ed. 2d 674, 695, 104 S. Ct. 2052, 2066.) Moreover, counsel has an affirmative obligation to make further inquiry where facts known and available or with minimal diligence accessible to him raise a reasonable doubt of the defendant's mental condition; and, a defendant is denied the effective assistance of counsel where reasonable grounds exist to question his sanity or competency but defense counsel fails to explore the issue. (*Loe v. United States* (E.D. Va. 1982), 545 F. Supp. 662, 666.) Under the facts of this case, defense counsel's failure to in-

vestigate was manifestly unreasonable. We need not and do not hold that defendant's assignment to the RTU alone imposed a duty on defense counsel to make a reasonable investigation into defendant's psychiatric history. Rather, we hold that his assignment to the RTU, coupled with the other circumstances in this case, imposed on defense counsel a duty to make such an investigation or a reasonable decision which would make such investigation unnecessary. Because defense counsel did neither, his assistance was ineffective.

We reject the State's contention that defense counsel's decision to proceed to trial, while anticipating better communication with defendant following the State's case in chief, was unreviewable trial strategy. As *Howard* states, such trial tactics cannot be viewed as sound where defense counsel failed to fully investigate and thus lacked full knowledge of defendant's case. Moreover, his failure to investigate defendant's mental history, insofar as it affected the outcome of the fitness hearing, cannot be justified as a trial tactic. We also reject the State's attempt to distinguish *Howard* on the ground that defense counsel here learned of defendant's mental history before he presented his case in chief and any defense to the charges. Defense counsel did not learn of that history and no competency hearing was held until after trial had commenced and the complainant had testified. Thus, defendant's records were not available to him as an aid in formulating a defense theory under which to cross-examine the only occurrence witness for the State. Moreover, the defense waived a jury trial without benefit of the information in the records. Thus, defense counsel's failure to discover these records resulted in an inability to use them effectively in at least part of the trial. (See *People v. Howard* (1979), 74 Ill. App. 3d 138, 142, 392 N.E.2d 775.) Because the outcome of the fitness hearing may have been different had defense counsel investigated defendant's mental condition and history and because such investigation may have led him to assert an insanity defense at trial (74 Ill. App. 3d 138, 141-42, 392 N.E.2d 775), there was sufficient prejudice to defendant to warrant a reversal of his conviction. As such, we need not adopt the position urged by defendant that a showing of prejudice is unnecessary in the context of this case.

■ Defendant next contends the trial court erred in finding him fit to stand trial because the evidence adduced at the fitness hearing revealed he was unfit on the first day of trial. In brief, he contends the evidence showed he was fit only with the additional medication he was receiving after his suicide attempt and that he was unfit on the first day of trial since he had not been taking the medication prescribed for him at that time. He cites *People v. Jackson* (1978), 57 Ill.

App. 3d 809, 373 N.E.2d 583, in support. Therein, the court held that since defendant had not received medication previously found necessary to render him fit, there was a *bona fide* doubt of his fitness to be sentenced. In a complaint against the manner in which the trial court conducted the fitness hearing, which we address here inasmuch as the State raises the contrary assertion to defend the trial court's fitness finding, defendant contends the court improperly applied the statutory presumption of fitness provided in section 104—10 of the Criminal Code of 1961 to find him fit to stand trial. (Ill. Rev. Stat. 1983, ch. 38, par. 104—10.) He asserts that because "[t]he holding of a fitness hearing presupposed that a doubt of fitness had been raised, *** [t]he issue should not have been resolved on the basis of any presumption, which had burst once a hearing was granted."

The State responds that the trial court properly found defendant fit to stand trial where it relied, *inter alia*, on the statutory presumption of fitness and its failure to observe, and of any party to bring to its attention, any evidence that he was unwilling or unable to cooperate with his counsel. The initial determination of the existence of a *bona fide* doubt of fitness necessary to order a fitness hearing is within a trial court's discretion, the State observes. It also notes that determination cannot be disturbed absent an abuse of discretion and concludes there was no such abuse here since defendant presented no facts creating the necessary doubt of his fitness. As to the propriety of the trial court's reliance on the presumption of fitness, the State responds that the holding of a fitness hearing does not alone raise a *bona fide* doubt of fitness (*People v. Martinez* (1979), 78 Ill. App. 3d 590, 596, 396 N.E.2d 1359) and thus the burden of proof was properly on defendant.

The State further defends the trial court's fitness finding on the ground that defendant's failure to take his medication before his suicide attempt was irrelevant to that issue because that attempt was merely manipulative in nature, not the result of involuntary depression. It again cites case law holding that the mere fact a defendant has attempted suicide, has a mental disorder or requires psychiatric treatment does not render him unfit and that prior mental problems or commitments to a mental hospital do not alone raise a *bona fide* doubt of fitness. The State asserts that defendant's conduct at trial belied his assertion that he was unfit, *i.e.*, that he did not understand the nature of the proceedings against him and was unable to assist in his defense, and that the trial court's determination is amply supported by defendant's hospital records and Dr. Stipes' testimony. It distinguishes *Jackson* as based on the trial court's sentencing of the

defendant in disregard of the facts that a previously ordered fitness examination had not been held and that defendant had not received, prior to sentencing, the medication previously found necessary to maintain his fitness. It asserts that here the trial court did consider the results of defendant's fitness examination and found his claim that he had not taken his medication prior to his suicide attempt speculative.

A trial court's determination of a defendant's fitness to stand trial rests largely within its discretion and will not be reversed absent a clear abuse of that discretion. (*People v. Wilson* (1984), 124 Ill. App. 3d 831, 836, 464 N.E.2d 1158.) The State is correct that the same rule applies to the initial determination whether a *bona fide* doubt of fitness has been raised to warrant a hearing on the issue in the first instance. (*People v. Turner* (1982), 111 Ill. App. 3d 358, 361, 443 N.E.2d 1167.) However, this argument is of little avail to the State since the trial court's initial determination that a *bona fide* doubt of defendant's fitness to stand trial existed and thus required a fitness hearing is not before us in this appeal.

Insofar as the trial court based its ruling that defendant was fit on the first day of trial on its finding "totally speculative" his claim that he attempted suicide by overdosing on his and other inmates' medication, the trial court did not abuse its discretion. Insofar as the trial court based its ruling that defendant was fit to stand trial on the date of the hearing on its finding Dr. Stipes more credible than Dr. Bogen and on its conclusion that the suicide attempt was manipulative in nature, not the result of involuntary depression, it also exercised its discretion properly. We also agree that *Jackson* is distinguishable on the grounds asserted by the State and thus does not require a finding of an abuse of discretion here. However, these observations do not end our inquiry.

■ Specifically, we must determine whether the trial court properly relied, in part, on the statutory presumption of fitness provided in section 104—10 of the Criminal Code of 1961 to find that defendant had been fit on the first day of trial. That statute provides, *inter alia,* a presumption of fitness to stand trial and that a defendant is unfit if he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense because of his mental or physical condition. (Ill. Rev. Stat. 1983, ch. 38, par. 104—10.) Section 104—11 of the Criminal Code of 1961 provides, *inter alia,* that the issue of fitness may be raised by the defense, the State, or the trial court; however, once a *bona fide* doubt of fitness has been raised, it places the burdens of going forward with the evidence and of proving fitness

by a preponderance of the evidence only on the State. (Ill. Rev. Stat. 1983, ch. 38, pars. 104—11(a), (c).) It requires no citation of authority to note that we must construe these provisions together as they are *in pari materia.* Doing so leads to the inescapable conclusion that, although a presumption of fitness obtains initially in all criminal proceedings, once a *bona fide* doubt thereof is raised, the presumption "bubble" bursts and a hearing must be held where the State is required to prove fitness by a preponderance of the evidence. (*People v. Burnside* (1977), 52 Ill. App. 3d 524, 528, 367 N.E.2d 733.) As such, the trial court erred in relying in part on the statutory presumption of fitness to find defendant fit on the first day of trial. The State's arguments that there were no facts creating a *bona fide* doubt of fitness and that the holding of a fitness hearing does not "raise" such a doubt simply fail to grasp that, as defendant notes, such a hearing "presupposes" the "raising" of the required doubt and that whether the doubt is *"bona fide"* is relevant only to the *initial* determination to hold a fitness hearing.

■ Next, we must determine whether the trial court also properly relied on its failure to observe, and of any party to bring to its attention, any evidence that defendant was unwilling or unable to cooperate with counsel at the "earlier proceedings" in finding him fit on the first day of trial. To do so, we must determine the proper inquiry the court must undertake in deciding the issue of actual fitness. We conclude that section 104—11 mandates two separate inquiries on the issue of fitness. The first is whether the defense, the State or the court has raised a *bona fide* doubt of the defendant's fitness. The second, where such a doubt is raised, is whether the defendant is actually fit. (Ill. Rev. Stat. 1983, ch. 38, par. 104—11(a).) As previously noted, section 104—11(c) then places the burdens of going forward with the evidence and of proving fitness on the State. Ill. Rev. Stat. 1983, ch. 38, par. 104—11(c).

Moreover, in determining whether a *bona fide* doubt of fitness has been raised to require a hearing in the first instance, a trial court may properly rely on its own observations of the defendant or suggestions by counsel. (*People v. Burson* (1957), 11 Ill. 2d 360, 370, 143 N.E.2d 239.) However, we do not believe that, therefore, a trial court may rely on its failure to observe or counsel's failure to suggest the existence of any problems with a defendant's fitness to decide the ultimate question, *i.e.,* whether or not the State proved by a preponderance of the evidence that defendant was fit to stand trial. Rather, under section 104—16 of the Criminal Code, it must decide the issue only on the evidence adduced at the fitness hearing. (Ill. Rev. Stat.

1983, ch. 38, par. 104—16(d); *People v. Turner* (1982), 111 Ill. App. 3d 358, 365, 443 N.E.2d 1167.) To the extent that it determines the issue of fitness on factors other than the preponderance of the evidence, the trial court deviates from the statutory requirements and abuses its discretion. As such, the trial court here abused its discretion in finding defendant fit on the first day of trial based on its own observations and the lack of any suggestion by counsel that defendant was unfit. And again, the State's argument that the trial court correctly found defendant fit since it found no *bona fide* doubt of fitness simply misconstrues the statute. The existence of a *bona fide* doubt of fitness is germane only to whether, in the first instance, a fitness hearing should be held and is not the proper standard on which to determine the ultimate question.

Finally, defendant raises two additional errors concerning the manner in which the trial court conducted the fitness hearing. He complains the trial court failed to consider his fitness prior to trial and that he bore the burden of proof at the hearing, contrary to section 104—11, which places that burden on the State, because he presented his witnesses and argued to the court in closing first.

■ The State first responds, citing the trial court's reference to defendant's fitness during the "earlier proceedings," that it did consider his fitness prior to trial. The State also made its previously detailed argument that a fitness hearing does not alone raise a *bona fide* doubt of fitness in response to the contention that defendant had the burden of proof at the hearing.

We disagree with defendant as to the first error alleged. In *People v. Jackson* (1978), 57 Ill. App. 3d 809, 373 N.E.2d 583, the defendant, who was tried by the bench at the same time his codefendants were tried by a jury, alleged he was unfit during the selection of their jury. The court rejected his argument on the ground, *inter alia*, that this alleged instance of unfitness occurred before defendant's trial began and was thus insufficient to raise a *bona fide* doubt of his fitness when his "trial commenced." (57 Ill. App. 3d 809, 813, 373 N.E.2d 583.) From *Jackson*, we conclude that the due process requirement that a defendant be fit before being made to stand trial (*Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836), properly focuses upon the date on which his trial commences, not the period or proceedings prior to it.

■ However, we agree with defendant that the fact he presented his witnesses and argued in closing first at the fitness hearing resulted in a shift of the burdens of going forward with the evidence and of proof from the State to him, contrary to section 104—11. In

contrast to the former version of the statute (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—1), section 104—11 shifts the burden of going forward with the evidence from the party raising the issue of fitness to the State, while it maintains the burden of proof on the State. In *People v. Bilyew* (1978), 73 Ill. 2d 294, 383 N.E.2d 212, the supreme court held that the trial court's unconstitutional allocation of the burden of proof in a fitness hearing to the defendant, pursuant to the statute then in force, had not entered into its determination of the issue and that it had instead found defendant fit by a preponderance of the evidence. It also held that the fact defendant offered his witnesses first at the hearing did not conflict with its conclusion, but merely reflected the trial court's requirement that defendant proceed first in accordance with the statute. It noted that up to that time the statute had always placed the burden of going forward with the evidence on the party raising the issue, that this provision had not been held unconstitutional, and that it did not merely refer to the raising of a *bona fide* doubt of fitness requiring a hearing. 73 Ill. 2d 294, 300-01, 383 N.E.2d 212.

From *Bilyew*, we conclude that the trial court should have required the State to proceed first in presenting evidence and in arguing to the court at the close of the hearing in accordance with the statute now in force. As it did not, it improperly placed both burdens on defendant. The trial court's failure may seem to warrant a holding that it placed only the burden of going forward with the evidence on defendant. However, in view of the trial court's reliance on the statutory fitness presumption and its failure to observe, and of counsel to bring to its attention, any problems with defendant's fitness, the order of proceeding manifestly reveals that it decided defendant had not met the burden of overcoming those factors, *i.e.*, of proving that he was unfit notwithstanding them. In the final analysis, we are not as sanguine as the supreme court in *Bilyew* that "the trial judge's *** statement of [his] reasons for finding defendant fit, fairly read, gives no indication that [he] was concerned about the burden of proof or believed that defendant had not met anything required of him" and that the statement "is entirely consonant with, and gives substantial confirmation to, the conclusion that the trial judge found defendant fit by a preponderance of the evidence." 73 Ill. 2d 294, 301, 383 N.E.2d 212.

Finally, because of the ineffective assistance of counsel and the trial court's errors at the fitness hearing, we must conclude that defendant is entitled to a new fitness hearing and, if he is found fit to stand trial, a new trial. The difficulties in retrospectively determining

the defendant's fitness to stand trial in 1984 make this relief appropriate. *Dusky v. United States* (1960), 362 U.S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788 (*per curiam*); *People v. Johnson* (1984), 121 Ill. App. 3d 859, 862, 460 N.E.2d 336.

For all of the foregoing reasons, the finding of fitness to stand trial and the judgment of conviction entered by the trial court are reversed and the cause is remanded for a new fitness hearing in accordance with this opinion and a new trial if defendant is found fit to stand trial.

Reversed and remanded.

RIZZI and WHITE, JJ., concur.