THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL WAYNE THOMPSON, Defendant-Appellant.

Fourth District   No. 4—87—0239

Opinion filed March 3, 1988.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

David B. Shaw, State's Attorney of Pittsfield (Kenneth R. Boyle, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case is now before us for a fourth time. After a jury trial in the circuit court of Pike County, defendant Michael Wayne Thompson was convicted on November 11, 1976, of a murder committed on April 27, 1976, and was subsequently sentenced to an indeterminate term of 50 to 150 years' imprisonment. On appeal, we reversed and remanded for a new fitness hearing and, if defendant was found fit, a new trial. (*People v. Thompson* (1978), 60 Ill. App. 3d 198, 376 N.E.2d 442.) He was subsequently found fit, tried by jury, again convicted and sentenced on May 9, 1979, to an indeterminate term of 50 to 150 years' imprisonment. We affirmed on direct appeal. *People v. Thompson* (1980), 80 Ill. App. 3d 1207 (unpublished order under Supreme Court Rule 23).

On March 14, 1983, defendant filed an amended post-conviction petition, which the trial court summarily dismissed. On appeal, we reversed and remanded because of improper summary procedure. (*People v. Thompson* (1985), 135 Ill. App. 3d 1169 (unpublished order under Supreme Court Rule 23).) After an evidentiary hearing, the circuit court dismissed the petition on March 9, 1987, and the cause is again before us on appeal.

The basic contention of the instant post-conviction petition is that appointed defense counsel at the second trial was incompetent for failure to properly investigate the possibility that defendant might reasonably have been able to defend upon a theory of insanity. The circuit court ruled that incompetency of counsel was not shown, noting that it did not deem the counsel to have been put on notice of a requirement of further inquiry.

On appeal, defendant maintains the record shows that further in-

quiry should have been made and that such inquiry would likely have revealed the existence of a viable defense of insanity. The State maintains (1) the question of incompetency has been waived by the failure of the defense to raise it on direct appeal, and (2) in any event, the record does not show any reasonable likelihood that further investigation would have revealed a viable insanity defense for defendant. We agree with the State's latter contention and need not consider the waiver issue. We affirm.

At the second trial, defendant admitted to the following chain of events. On the date of the alleged offense, he and Nick Stillman drove to a point in a road in front of the victim's residence. Defendant walked up to the house, met the victim and asked for some gasoline, which the victim refused. As defendant was leaving, the victim shouted to him to stop, and, upon his refusal to do so, the victim fired a shot at him. Defendant fell, and a gun he was carrying fired. Stillman had fired a gun at about the time of the victim's shot. Defendant and Stillman then attempted to refire, but defendant's gun did not discharge. The victim had fallen, and the defendant walked to where the victim lay. Defendant noticed the victim was gasping for breath, so defendant fired at the victim's body to silence him. Defendant and Stillman then ransacked the victim's house. Defendant testified he had been drinking heavily prior to the occurrence.

The following matters concerning defendant's possible insanity at the time of the offense were known to defense counsel at the second jury trial. At the first competency hearing, Dr. Phillip Bornstein testified he had examined defendant for an hour and read from defendant's records. He concluded defendant was a "periodic excessive [drinker having a] possible history of drug abuse." Dr. Bornstein also found defendant to have a personality disorder but said he did not have signs of a severe psychosis. Prior to the second trial, a court-appointed psychiatrist, Richard Newman, testified defendant exhibited no indication of an emotional disorder which would interfere with his ability to participate in his trial or to understand the charges. Dr. Newman did indicate defendant suffered from a personality disorder.

Defendant testified at the hearing on the post-conviction petition that: (1) he enlisted in the Army in 1973; (2) after witnessing a friend killed in a training exercise, he attempted suicide and was subsequently discharged; (3) he reenlisted in 1975 but was soon discharged for medical reasons; (4) he then enlisted in the Navy, but, after being under psychiatric observation and undergoing a test giving rise to a profile called Minnesota Multi-phasic Personality Inventory (MMPI), he was discharged for psychiatric reasons; and (5) in the two months

elapsing between the Navy discharge and the killing of the victim, he had drunk heavily.

The major thrust of defendant's assertion that his counsel at the second trial acted incompetently came from the testimony of Lowell Williams, a psychiatrist. He testified he had been associated with Dennis Pope, a psychologist who had examined the results of defendant's MMPI tests. Upon receiving evidence that Pope's whereabouts could not be determined, the court permitted Williams to read from a letter by Pope concerning defendant, which had been directed to defendant's counsel at his first trial. The letter concluded:

> "In summary the profile suggests that Mr. Thompson may reliably be diagnosed as a Catatonic Schizophrenic with paranoid ideation. At times he has gradiose [sic] ideas, and a history of poor personal relationships. He goes through periods of excited motor activity especially after heavy drinking where violence and homicide are possible actions. Thought associations are often disorganized and vague. Tension and anxiety are common features. It is my opinion that Mr. Thompson is in need of psychiatric treatment. Hospitalization seems most appropriate."

Dr. Williams also testified a social worker working with Pope and him had visited defendant in jail and had written a document diagnosing defendant's condition as catatonic schizophrenia. Williams said he had concurred in the diagnosis.

Defendant testified at the post-conviction hearing that defense counsel at the second trial had never discussed with him the possibility of an insanity defense, and he did not know of the possibility of using such a defense until 1985. Defendant's counsel at the second trial testified he could not remember whether he discussed the insanity defense with defendant, but he had read the record concerning the first trial and had seen matters concerning psychiatric diagnoses in the file. That counsel also testified he did not think he came across any information indicating the viability of an insanity defense. Although no insanity defense was attempted, evidence that defendant had been diagnosed as a catatonic schizophrenic was introduced by the defense at sentencing after the second trial.

■ The standard for determining whether the conduct of defense counsel in a criminal case meets constitutional muster is that set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. That Court stated that, for a claim of ineffective assistance of counsel to prevail, a defendant must prove two things. One is that the representation fell below an objective standard of reasonableness. The other is that the deficient performance prejudiced the

client in such a way as to create a "reasonable probability" that the result of the proceeding would have been different, with the words "reasonable probability" meaning "a probability sufficient to undermine confidence in the outcome." (*Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) As we have indicated, we deem the second factor to be dispositive here. We agree with the tenor of the decision of the circuit court that the record before the court at the hearing on the post-conviction petition did not indicate a "reasonable probability" that an insanity defense on behalf of the defendant would have prevented his conviction.

■ At all times pertinent, the insanity defense has been defined in these terms:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." (Ill. Rev. Stat. 1985, ch. 38, par. 6—2.)

Defendant maintains that reasonable investigation by his defense counsel as to defendant's prior mental problems would have likely enabled him to put on an effective insanity defense. However, armed with all of the information which defense counsel had at the time of the hearing on the post-conviction petition, no evidence was presented that any medical opinion testimony could be produced indicating that, at the time of the killing, defendant either lacked the capacity to recognize the criminality of killing another without cause or lacked the power to conform his conduct to the requirements of law. No lay testimony to that effect was shown to be available, either. (See *People v. Liberg* (1985), 138 Ill. App. 3d 986, 486 N.E.2d 973.) Thus, the only testimony available indicating defendant's insanity was the circumstantial evidence that he was a catatonic schizophrenic at the time of the occurrence and likely to be violent when intoxicated.

Neither at trial nor at the post-conviction hearing did defendant testify as to having had any lack of understanding as to the wrong in killing another nor did he testify as to any uncontrollable urge to shoot or kill. His testimony did not reveal any paranoid feelings in regard to the victim. In *People v. Fenderson* (1987), 157 Ill. App. 3d 537, 510 N.E.2d 479, the defendant's contention he was denied effective assistance of counsel was rejected on direct review. There, the

defendant maintained his counsel had not investigated diagnoses of 9 and 14 years earlier which indicated he was a schizophrenic. Noting that defendant's testimony at trial gave no indication he was under any mental disability at the time of the crime, the court held the defense had failed to prove a sufficient likelihood the result of the trial would have been different. Although the time lag between the mental diagnoses in the instant case was much less than in *Fenderson*, we deem the case to be analogous. In each, the evidence of the conduct of the respective defendants at the time of the charged offenses is highly significant.

In arguing the situation here requires granting him a new trial, defendant relies principally upon the appellate court decisions in *People v. Murphy* (1987), 160 Ill. App. 3d 781, 513 N.E.2d 904, and *People v. Howard* (1979), 74 Ill. App. 3d 138, 392 N.E.2d 775, where questions of incompetence of counsel in the trial court were raised for the first time on direct appeal. In both cases, the reviewing court held the record indicated that failure of trial counsel to sufficiently investigate and present to the trial court matters concerning the possible mental illness of the client deprived the client of his or her right to competent representation. However, in both cases, the standard used by the appellate court in determining whether the client was prejudiced by counsel's failure seemed to be less stringent than the "reasonable probability" of success standard of *Strickland*.

In *Murphy*, a defendant had been found fit to stand trial and then convicted of deviate sexual assault and aggravated kidnapping. At the fitness hearing, psychiatrists had given conflicting opinions as to the defendant's fitness for trial. Apparently, defense counsel had not informed the court his client was being held in a unit for persons with substantial mental problems. The court indicated that, if the situation had been revealed to the court, a different result *might* have been reached. The court deemed such a standard was sufficient under *Strickland* to show prejudice in cases where counsel had failed to investigate the mental condition of the client. The court also indicated that further investigation by defense counsel might have enabled the defendant to put on a successful defense of insanity. The defendant's convictions were reversed, and a new fitness hearing and, if necessary, a new trial were granted.

In Howard, a jury found an accused guilty of aggravated battery. Her trial was preceded by two competency hearings. A court-appointed psychiatrist who had examined the defendant testified defendant was a poor, 26-year-old woman who had two children born out of wedlock, had a history of delinquency and had lived on welfare. He

stated the record indicated she had been taken into custody and placed in mental institutions on several occasions but never had been found mentally ill and was always discharged in a few days. He opined the defendant had no disabling mental disorder although she would be difficult for court and counsel. Evidence at trial indicated the defendant had made an unprovoked attack on the victim and, when arrested shortly thereafter, she was incoherent and purported not to remember the event.

At the sentencing hearing in *Howard*, the probation officer produced a report which indicated she had previously been taken to a mental health zone center after she had made another unprovoked attack. The center had diagnosed her as a schizophrenic in a paranoid state and then discharged her. The question of competency of counsel was apparently raised for the first time on appeal, and the court deemed the failure of the defense counsel to discover the report of the zone center to have been incompetence which "may" have prevented a different outcome of the case. (*Howard*, 74 Ill. App. 3d at 141, 392 N.E.2d at 777.) The court also deemed the failure of counsel to discover the report to be incompetence which "likely" prevented the presentation of an effective insanity defense at trial. *Howard*, 74 Ill. App. 3d at 142, 392 N.E.2d at 778.

As we have stated, the record here does not indicate that further investigation by defense counsel at the second trial would have revealed any evidence in support of an insanity defense by defendant except the information that defendant had been recently diagnosed as a catatonic schizophrenic. We recognize that in *People v. Childs* (1972), 51 Ill. 2d 247, 281 N.E.2d 631, the Illinois Supreme Court held evidence of an accused's mental illness was sufficiently relevant to constitute some evidence of an insanity defense, thus raising that issue. Shortly thereafter, in *People v. Redmond* (1974), 59 Ill. 2d 328, 320 N.E.2d 321, the court held that, to raise the insanity defense, sufficient evidence must be presented to establish a reasonable doubt as to the accused's sanity. Regardless of the standard necessary to raise the issue of insanity, we do not consider the fact that further evidence discovered by a more intense investigation by counsel here might have raised the insanity issue to be dispositive of the question of whether the "reasonable probability" standard of *Strickland* has been met.

Here, unlike in *Howard*, the defendant's conduct at the time of the offense did not indicate insanity. Here, unlike in either *Murphy* or *Howard*, after the commission of violent conduct, the defendant was shown to have burglarized the home of the victim. We recognize that,

in order to show prejudice under *Strickland*, a defendant need not show that an acquittal would more likely than not have resulted had defense counsel made a proper investigation. (*Strickland*, 466 U.S. at 695-96, 80 L. Ed. 2d at 698-99, 104 S. Ct. at 2068-69.) However, we conclude that, here, any chance that evidence of defendant's condition of having catatonic schizophrenia would have resulted in an acquittal is very small. The likelihood of acquittal is so remote that confidence in defendant's guilt is not undermined in any degree by the fact that defense counsel did not make further investigation. To the extent our understanding of the application of *Strickland* to this case differs from the analysis in *Murphy*, we reject the analysis of *Murphy*.

We affirm.

Affirmed.

LUND and SPITZ, JJ., concur.