THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER SCHULTZ, Defendant-Appellant.

Second District   No. 2—88—0010

Opinion filed August 9, 1989.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

A jury found defendant, Walter Schultz, guilty of the offense of unlawful use of weapons by a felon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1), and the trial court sentenced defendant to a four-year term of incarceration. On appeal, defendant contends that his trial counsel was incompetent because counsel failed to investigate fully the possibility that defendant might reasonably have been able to raise the defense of insanity. We affirm.

On June 17, 1987, defendant was charged by indictment with two counts of unlawful use of weapons by a felon. Count II of the indictment was nol-prossed by the State, and the cause proceeded to a jury trial on the remaining charge.

At trial, Cathy Frederick, a cashier at a Dominick's food store located in Carol Stream, Illinois, testified that on June 2, 1987, at 1:30 a.m., she was working at one of the front registers when she saw defendant enter the store. Defendant went to the housewares aisle and then walked towards the checkout lanes. As defendant approached Frederick, she saw him take a knife out of its package and

walk past her. Frederick directed defendant to her register. Defendant initially jerked away from Frederick but then followed her. Frederick stated that she tried to take the knife's package from defendant so she could scan it on her register but defendant refused. Defendant then threw a $5 bill at Frederick and said he was "gonna fucking kill him." Frederick stated that defendant sounded very excited or angry and walked out of the store very fast. Frederick followed defendant outside and heard him yelling and screaming in the parking lot. Frederick testified that she did not smell the odor of alcohol on defendant and that defendant had no difficulty either talking or walking. Frederick further testified that defendant did not brandish the knife at her and did not mention specific names when he talked about killing somebody.

Steven Foley, a security guard at the Dominick's store, testified that while he was outside the store smoking a cigarette, he heard some noise by a Sears store located in the mall. About five minutes later, Foley saw defendant walk past a Walgreen's store, kick over two shopping carts, and proceed into Dominick's. Defendant went to the housewares aisle, picked up a knife, and headed towards the registers. Foley stated that defendant took the knife out of its package and put a $5 bill on the register. Foley heard defendant say, "I am going to kill some mother fucker," and defendant then ran at an easy pace out of the store. After calling the police, Foley, who was accompanied by the assistant manager, the night porter, and Frederick, went outside after defendant. Foley stated that defendant stood in front of a Baskin-Robbins ice cream shop and yelled to Foley and those accompanying him, "[w]ho are you looking at; you want to fight[?]" Foley testified that he did not know if defendant was intoxicated.

Louis Zapata, who worked at both a Burger King restaurant and the Baskin-Robbins located in the mall, testified that after he left work at the Burger King, he heard the noise of bottles breaking. When Zapata arrived at the Baskin-Robbins on bicycle, he observed defendant throwing bottles at the store. After he identified himself as the assistant manager of the Baskin-Robbins, Zapata told defendant to stop throwing the bottles. Defendant then yelled at some people outside Dominick's, called them "niggers," and pulled out a knife. Defendant lifted the knife over his head, headed towards Zapata, and said, "Hey Amigo, I'm not going to hurt you. Come here." Zapata told defendant not to come any closer, but defendant walked to within several feet from Zapata. Zapata testified that defendant lowered the knife to waist height and pointed it at him. Zapata then got on his

bicycle and rode away. When Zapata saw a police car near the Sears store, he told Carol Stream Officer Frank Moore about defendant. Moore confronted defendant and ordered him to put the knife down. Defendant complied with Moore's request and ran to a nearby Wendy's restaurant. According to Zapata, defendant appeared to have trouble running and was drunk.

A stipulation was read to the jury that defendant had a previous conviction of a felony, and the defense rested without presenting any evidence. After a brief deliberation, the jury found defendant guilty of unlawful use of weapons by a felon.

In a letter dated September 4, 1987, defendant informed the trial court that he was dismissing his trial attorneys due to their incompetence. On September 24, 1987, the trial court granted the public defenders' motion to withdraw as counsel; however, one of the public defenders, Wayne Brucar, was directed to remain as stand-by counsel while defendant proceeded through his post-trial motions *pro se*. On September 28, 1987, defendant filed a motion for a new trial. Concerning the allegation that his trial counsel was incompetent, defendant's motion stated:

"In *NICHOLSON vs RUSHEN*, C.A. 9 (Cal.), 1985, 767 F 2d. 1526, alleged ineffective assistance by counsel could not be the basis for reversal or for a new trial, however, the following points, culmenated [*sic*] with POINTS and AUTHORITIES I—III are the basis for the defendant's motion for a new trial.

(a) Defective performance of defense counsel (Attorney's Wayne Brucar and Daniel Cummings) caused the defendant deprivation of his constitutional rights by depriving the defendant of adequate representation under U.S.C.A. Const. Amend. 6

(b) Substantansive [*sic*] due process violations and judicial actions.

(c) Misconduct under color of state law which violated defendant's constitutional rights by providing for inadequate representation to indigent client.

(d) Allegedly violated, either intentionally or negligently, to gather information in preparing for defendant's trial.

(e) Their negligence deprived the defendnat [*sic*] the right to access to the courts."

On October 1, 1987, with defendant's consent, the trial court appointed a private attorney, Frank Valenti, to represent defendant. Valenti filed a motion for a new trial which, with respect to defendant's ineffective assistance of counsel claim, stated:

"5. The Defendant was denied effective assistance of counsel in that counsel:

a. failed to request a psychological examination of the Defendant to determine if he was fit to stand trial and/or participate in his own defense.

* * *

e. failed to request a psychological examination of the Defendant to determine if the Defendant had any defenses which related to his psychological and/or physical condition.

f. failed to present evidence to determine the Defendant's psychological condition at the time of the alleged incident."

At a November 20, 1987, hearing on defendant's post-trial motion, Valenti stated that upon reading defendant's presentence report, he believed that trial counsel should have requested a competency hearing prior to trial because defendant had psychological problems. Valenti admitted that defendant understood the charges against him and that defendant was taking Lithium. Valenti further argued that it was unclear whether defendant was presently in the same condition as the condition he was in the night of the incident. Valenti concluded that trial counsel's failure to have defendant examined for competency to stand trial affected the outcome of defendant's trial. At this point, the trial court did not rule on defendant's post-trial motion.

On December 14, 1987, at defendant's sentencing hearing, the trial court heard further testimony with respect to defendant's motion for a new trial. Both of defendant's trial attorneys testified at the December 14 hearing. When asked whether he discussed possible defenses with defendant, Wayne Brucar responded:

"A. Yes. Initially, at the beginning of it, I discussed the possibility of going with a voluntary intoxication; the possibility of having been evaluated for fitness for trial and the possibility of going with an insanity defense."

Daniel Cummings, Brucar's cocounsel, testified that Brucar explained to defendant the possible strategies of his case. After considering the evidence presented, the trial court denied defendant's motion for a new trial. After concluding the hearing, the trial court sentenced defendant to a four-year term of incarceration. From that judgment, defendant has timely brought this appeal.

The sole issue raised in this appeal is whether trial counsel's failure to investigate defendant's mental history constituted ineffective assistance of counsel.

Defendant contends that revelations at almost every stage of the proceedings below should have led trial counsel to question defend-

ant's mental health and to conduct an investigation into defendant's psychiatric history for use as a possible defense to the criminal charges against defendant. In support of that contention, defendant directs our attention to his irrational and inexplainable conduct leading to his arrest, his presentence report, and his use of several antipsychotic drugs. Relying on *People v. Howard* (1979), 74 Ill. App. 3d 138, 392 N.E.2d 775, and *People v. Murphy* (1987), 160 Ill. App. 3d 781, 513 N.E.2d 904, defendant concludes that had his trial counsel properly investigated his mental history, which was apparent from his presentence report, trial counsel could have raised the insanity defense and thereby negated the mental state necessary for the commission of unlawful use of weapons by a felon.

The State asserts that because the record is silent with respect to whether trial counsel conducted an investigation into defendant's mental history, defendant's contention that his trial counsel was incompetent is without merit. Alternatively, the State argues that even if trial counsel failed to investigate defendant's mental history, there was no cause to do so under the particular facts of this case.

■ ■ To establish that counsel has been incompetent, a defendant must demonstrate that his counsel committed errors so serious that, judged by an objective standard, his performance was incompetent and that the errors caused prejudice to the defendant without which there is a reasonable probability that the result of the proceedings would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68; *People v. Collins* (1985), 106 Ill. 2d 237, 273, 478 N.E.2d 267, 283; *People v. Hicks* (1987), 162 Ill. App. 3d 707, 710, 516 N.E.2d 807, 809.) There is a strong presumption that trial counsel's performance falls within the "wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065; see also *People v. Mack* (1984), 105 Ill. 2d 103, 129-30, 473 N.E.2d 880, 894.) The failure of trial counsel to investigate sufficiently and present to the trial court matters concerning a defendant's possible mental illness deprives the defendant of the right to competent representation. *People v. Murphy* (1987), 160 Ill. App. 3d 781, 789, 513 N.E.2d 904, 910; *People v. Howard* (1979), 74 Ill. App. 3d 138, 142, 392 N.E.2d 775, 778.

Although defendant contends that *Murphy* and *Howard* are factually similar to this case and that we should follow the results reached in those cases, we consider *People v. Thompson* (1988), 166 Ill. App.

3d 909, 520 N.E.2d 1146, to be dispositive of the issue raised on appeal.

In *Thompson*, the defendant argued that a reasonable investigation by his defense counsel with respect to the defendant's prior mental problems would have likely enabled him to put on an effective insanity defense. (*Thompson*, 166 Ill. App. 3d at 913, 520 N.E.2d at 1148.) In affirming the dismissal of the defendant's post-conviction petition, the *Thompson* court stated that the defendant failed to produce any medical opinion testimony which indicated that, at the time the offense was committed, he lacked the capacity to recognize the criminality of his conduct or lacked the power to conform his conduct to the requirements of the law; no lay testimony to that effect was presented either. The *Thompson* court further determined that, at best, only circumstantial evidence of the defendant's sanity was available to trial counsel. (*Thompson*, 166 Ill. App. 3d at 913, 520 N.E.2d at 1148.) Because the record did not indicate that further investigation by defendant's trial counsel would have revealed any evidence in support of the insanity defense, the *Thompson* court concluded that the defendant failed to show a "reasonable probability" that the result of his cause would have been different. *Thompson*, 166 Ill. App. 3d at 915-16, 520 N.E.2d at 1149-50.

■ Like the defendant in *Thompson*, defendant here has failed to show that further investigation of his mental history would have supported an insanity defense. Defendant makes much of the fact that his presentence report "cried out" for the presentation of an insanity defense. We do not share that view. Defendant's presentence report indicates that although he spent a great deal of time in a variety of institutions, with the exception of one, all of those institutions diagnosed defendant as being anti-social and suicidal. Defendant was further diagnosed as having a borderline personality disorder and as suffering from acute alcohol abuse. We fail to see how defendant's diagnoses in any way indicate that he was suffering from a severe mental illness which would support an insanity defense. More importantly, there is no evidence in the record which demonstrates that defendant was insane at the time the offense was committed. Because the record in this case fails to indicate that further investigation of defendant's mental history would have adduced any evidence in support of an insanity defense, we conclude that defendant has not satisfied the "reasonable probability" prong of the *Strickland* test. (See *Thompson*, 166 Ill. App. 3d at 915, 520 N.E.2d at 1150.) Consequently, defendant has not demonstrated that his trial counsel was incompetent.

Finally, we note that even if we were to accept defendant's contention that the circumstances of this case warranted an investigation into his mental history, the record indicates that trial counsel made a proper investigation. At the hearing on defendant's post-trial motion, defendant's trial counsel, Wayne Brucar, and cocounsel, Daniel Cummings, testified that Brucar discussed the possibility of raising the insanity defense with defendant. Such testimony leads us to conclude that trial counsel did make an investigation into defendant's mental history, and, in the absence of specific factual allegations tending to show how counsel's investigation was inadequate, we shall presume that trial counsel properly represented defendant.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and NASH, JJ., concur.