THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HUBERT JOSEPH, Defendant-Appellant.

Second District   No. 2—87—0258

Opinion filed November 30, 1988.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul A. Logli, State's Attorney, of Rockford, and Peter C. Drummond, of Staunton (William L. Browers and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Following a jury trial, defendant, Hubert Joseph, was found guilty

of violating the Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1100 *et seq.*) for possession of less than 30 grams of morphine and cocaine. Defendant was sentenced to a one-year term of imprisonment and fined $995. On appeal, defendant argues: (1) the trial court erred in finding him fit to stand trial and in refusing to allow a psychologist to observe defendant throughout the trial; (2) the trial court erred in refusing to suppress evidence seized from defendant as a result of the arrest of defendant which was made without a warrant or probable cause; (3) the trial court erred in failing to give defendant $5-a-day credit against his fine for time spent in custody awaiting trial pursuant to section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 110—14). The parties are familiar with the facts, and we will address them only as necessary in our disposition of defendant's appeal.

■ Defendant argues that the trial court erred in finding him fit to stand trial and in failing to allow a psychologist to observe defendant during trial and in failing to order a fitness hearing during or after trial. We do not agree. A defendant is presumed fit and is unfit where, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. (Ill. Rev. Stat. 1987, ch. 38, par. 104—10.) Where a *bona fide* doubt of defendant's fitness to stand trial is raised, a hearing as to defendant's fitness must be conducted. (*People v. Slaughter* (1970), 46 Ill. 2d 114, 262 N.E.2d 904; Ill. Rev. Stat. 1987, ch. 38, par. 104—11.) Once a fitness hearing is ordered, the State must prove by a preponderance of the evidence that the defendant is fit to stand trial. (*People v. Murphy* (1987), 160 Ill. App. 3d 781, 513 N.E.2d 904; Ill. Rev. Stat. 1987, ch. 38, par. 104—11.) A trial court's determination of a defendant's fitness to stand trial rests largely within its discretion and will not be reversed absent a clear abuse of that discretion. *People v. Murphy* (1987), 160 Ill. App. 3d 781, 513 N.E.2d 904.

In the instant case, the record clearly shows the trial court exercised its discretion, and such discretion was not abused in that sufficient evidence was adduced at the fitness hearing to support the trial court's determination of defendant's fitness to stand trial. On November 14, 1986, defense counsel moved for appointment of a psychologist to examine defendant as to his fitness to stand trial. The trial court on November 14, 1986, ordered the examination. A fitness hearing was held on January 8, 1987. The State called Dr. McNelly, a clinical psychologist who had examined defendant as to his fitness and who had performed over 100 fitness examinations in the past. Dr.

McNelly testified that he had interviewed defendant on November 21, 1986, and reviewed records of defendant's mental health from 1983. Dr. McNelly testified that he questioned defendant as to the charges against him and the nature and purpose of the proceedings, stating that defendant understood and was "quite specific" in describing the charges and the procedures involved in his criminal prosecution. Dr. McNelly opined that, based on the information available to him, including his December 8, 1986, interview with defendant, defendant was fit for trial. Dr. McNelly, however, expressed reservations in that Dr. McNelly was aware that defendant had a prior history of psychiatric difficulties, and information about his prior history would help alleviate Dr. McNelly's concern about defendant "decompensating" into "inappropriate behavior." However, Dr. McNelly reiterated defendant was currently fit to stand trial.

On cross-examination, Dr. McNelly testified that the records that Dr. McNelly was interested in reviewing would aid in recommending treatment to maintain defendant's fitness. However, defendant refused to release these records. Defense counsel asked Dr. McNelly whether his observations of defendant at the fitness hearing had changed his opinion. The doctor responded "No." The doctor stated that he had spoken with defendant before the hearing, and defendant knew the purpose of the hearing and wanted to get on with the trial. The doctor was aware that defendant had been found unfit in 1983 but later found fit for trial. Defense counsel introduced transcripts from December 10, 1986, and January 2, 1987, in which defendant made what defense counsel believed were irrational statements. After reviewing these transcripts, Dr. McNelly stated that obviously defendant was a difficult person to deal with, but Dr. McNelly believed he was still fit for trial. Again, Dr. McNelly expressed reservations in that he had been unable to review defendant's psychiatric records from a prior commitment to Douglas Singer Mental Health and that such records along with observing defendant's ability to function in two to three months might alleviate his reservations about defendant's ability to maintain fitness. At this point, defendant interrupted and offered to release the records that Dr. McNelly wished to review. The fitness hearing was continued to January 26, 1987, pending Dr. McNelly's review of these records.

On January 26, 1987, the fitness hearing resumed. Dr. McNelly testified to having reviewed the records he sought concerning defendant's prior hospitalizations. These records indicated that defendant was diagnosed in December 1983 as a chronic paranoid schizophrenic and, at that time, was in an acute or delusional stage. The records

also indicate he was treated and later found fit for trial and returned to jail. Dr. McNelly testified that defendant was currently in remission in that he was not in an acute or delusional stage. Dr. McNelly stated that it was possible but not currently probable that defendant could relapse into an acute stage. Dr. McNelly again opined that defendant was fit for trial but that Dr. McNelly had reservations, not as to defendant's current fitness, but as to his ability to maintain fitness throughout the course of a trial. Dr. McNelly stated that defendant was fit to begin the trial process. The doctor stated he was not missing or in need of any other evidence to aid him in forming his opinion. The trial court found defendant fit, and he was tried the next day, January 27, 1987. The trial court did not err in finding defendant fit for trial.

■ Defendant argues Dr. McNelly's testimony required a finding of unfitness. However, as just discussed, Dr. McNelly's opinion at all times, including the day before trial, was that defendant was fit for trial. At worst, Dr. McNelly was concerned about the future fitness of defendant. The trial lasted one day. The trial court was in a much better position to assess defendant's fitness during trial, and our review of the transcripts and the allegedly confused statements of defendant does not reveal an abuse of discretion on the part of the trial court in failing to order sua sponte another fitness hearing during trial less than 24 hours after finding defendant fit for trial. (People v. Mireles (1979), 79 Ill. App. 3d 173, 398 N.E.2d 150, 162.) Nor do defendant's repeated refusals to cooperate with defense counsel require a finding that defendant was unable to cooperate and, therefore, unfit. (People v. Pittman (1979), 75 Ill. App. 3d 683, 394 N.E.2d 702.) Defendant, having been found fit, was tried on January 27, 1987, and was sentenced on March 3, 1987. In summary, the record clearly shows the trial court did not abuse its discretion in finding defendant fit for trial and in not ordering sua sponte additional fitness hearings during or after trial.

■ Defendant's next contention on appeal is that the trial court erred in failing to grant defendant's motion to suppress evidence seized incident to defendant's arrest, which defendant argues was made without probable cause. The burden is on defendant to prove the illegality of an arrest when he seeks to use the illegality as a basis to suppress evidence seized incident to the arrest. (People v. Corrigan (1985), 129 Ill. App. 3d 787, 473 N.E.2d 140.) A trial court's determination on a motion to suppress will not be reversed on review unless it is manifestly erroneous. (People v. Hoskins (1984), 101 Ill. 2d 209, 461 N.E.2d 941.) Probable cause to arrest in the objective sense exists

where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution in believing that an offense has been committed and that the person arrested committed the offense. *People v. Moody* (1983), 94 Ill. 2d 1, 445 N.E.2d 275.

■ Defendant argues that the State failed to meet its burden of going forward after defendant made a *prima facie* case of no probable cause for a warrantless arrest. Defendant never made such a showing. Defendant argued that Officer Epperson did not intend to arrest defendant for public drinking if defendant had complied with Officer Epperson's request to pour out the beer. Defendant argued that Officer Epperson only arrested defendant when defendant "uttered an obscenity" after defendant poured out the beer. The arresting officer's subjective intent of whether to exercise discretion in arresting defendant for committing an offense in his presence is irrelevant to an objective determination of the existence of probable cause under the fourth amendment. (*People v. Moody* (1983), 94 Ill. 2d 1, 445 N.E.2d 275.) In the instant case, Officer Epperson testified that he observed defendant drinking from a can of beer on the sidewalk inside the housing projects and outside the housing projects on Lee Street in Rockford. The trial court's finding that Officer Epperson had probable cause to arrest defendant without a warrant for drinking on public property in violation of a city ordinance was not manifestly erroneous. Defendant's arrest was lawful, and the drugs seized incident to a lawful custodial arrest were admissible against defendant. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 494 N.E.2d 475.) Having determined that the trial court's finding of probable cause to arrest defendant for public drinking and refusal to suppress the evidence seized was not manifestly erroneous, we need not address defendant's contentions concerning probable cause to arrest defendant for disorderly conduct.

■ Defendant's last contention on appeal is that the trial court erred in failing to give him a $5-a-day credit against his $995 fine for time served while awaiting trial. We agree. Defendant was sentenced to one year in the Department of Corrections for his possession conviction. Defendant was also fined $995 pursuant to section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—9—1.1), representing the street value of the drugs seized in the instant offense. Section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 110—14) provides a day-for-day credit for time served on a bailable offense while awaiting trial as well as $5-a-day credit against any fine imposed upon conviction. *Peo-*

*ple v. Hare* (1988), 119 Ill. 2d 441, 519 N.E.2d 879.

■ The State argues that defendant waived the issue by not raising it at trial and that allowing defendant a credit against his fine pursuant to section 110—14 would defeat the purpose of section 5—9—1.1 authorizing fines for drug-related offenses and was not the intention of the legislature when it enacted section 5—9—1.1. Defendant has not waived the issue where, as here, the record does not show that defendant was given notice by the circuit court clerk of his right to a $5-a-day credit as required by section 110—14. (*People v. Roby* (1988), 169 Ill. App. 3d 187, 523 N.E.2d 631.) The language of section 5—9—1.1 is clear and unambiguous and does not indicate an intent to exclude fines imposed under this section from the $5-a-day credit allowed under section 110—14. (See *People v. Hare* (1988), 119 Ill. 2d 441, 519 N.E.2d 879.) In *Hare*, our supreme court addressed and rejected a similar argument with respect to a fine imposed under sections 1 through 11 of the Violent Crime Victims Assistance Act (Ill. Rev. Stat., 1984 Supp., ch. 70, pars. 501 through 511), prior to its amendment expressly excluding the $5-a-day credit allowed by section 110—14. We find the court's opinion and analysis controlling in our disposition of the issue. Section 5—9—1.1 is clear and unambiguous, and a plain reading does not indicate any intent by the legislature to exclude application of the $5-a-day credit allowed pursuant to section 110—14. Any attempt to deny a defendant this credit, mandated by section 110—14, must be accomplished by the legislature. See *People v. Hare* (1988), 119 Ill. 2d 441, 519 N.E.2d 879.

The judgment of the circuit court of Winnebago County is affirmed in part, reversed in part and remanded for the calculation of the appropriate $5-a-day credit.

Affirmed in part, reversed in part and remanded.

REINHARD and UNVERZAGT, JJ., concur.