THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SUSAN
MILLER, Defendant-Appellant.

Second District   No. 2—95—1102

Opinion filed October 4, 1996.

T. Jon Tyler, of Belvidere, for appellant.

Gary W. Pack, State's Attorney, of Woodstock (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:

The defendant, Susan Miller, was charged by grand jury with attempted first degree murder (720 ILCS 5/8—4(a), 9—1(a)(2) (West 1994)), armed violence (720 ILCS 5/33A—2 (West 1994)), and two counts of aggravated battery (720 ILCS 5/12—4(a), (b)(1) (West 1994)). Following a jury trial in the circuit court of McHenry County, the defendant was found guilty but mentally ill on all charges. She was sentenced to 25 years in prison and fined $207. We affirm the convictions and sentence, but award the defendant full credit against the fine.

## FACTS

The facts relevant to our decision are as follows. On June 25, 1994, members of the McHenry County sheriff's police were dispatched to 2917 Parkview Drive, Marengo, Illinois, in reference to a

stabbing that had occurred at that address. Upon their arrival, they learned that Dennis Miller had suffered knife wounds to his neck and back. Upon further investigation, the sheriff's police were dispatched to 405$^1$/$_2$ Prairie Street, Marengo, Illinois, where they arrested the defendant and subsequently charged her with attempted first degree murder, armed violence, and two counts of aggravated battery.

A McHenry County grand jury returned a bill of indictment against the defendant on July 6, 1994. The State filed a motion for a fitness examination to ascertain whether the defendant was fit to stand trial. The trial court thereafter issued an order directing Robert Meyer, Ph.D., to conduct a psychological examination of the defendant for the purpose of determining the defendant's fitness to stand trial. Upon submission of Dr. Meyer's written report, the trial court found the defendant competent to stand trial. Trial was set for May 1, 1995.

At trial, the victim, Dennis Miller, testified that on the day in question he had picked up his father, Henry Miller, and taken him to Dennis' residence at 2917 Parkview Drive. They were just finishing mowing the grass, when the defendant, Dennis' half-sister, approached the residence in her vehicle. She got out of her vehicle and walked toward Dennis, who was standing in the driveway. She accused Dennis of stealing her coin collection. Dennis told her that he did not have her coin collection. Moments later, the defendant walked back to her vehicle and got a knife. Dennis told his father that the defendant had a knife. The defendant then approached Dennis and stabbed him in the neck. Dennis knocked her down to the ground, but she came back at him and stabbed him four more times as Dennis wrestled with her. At one point in their struggle, Dennis leaned over the defendant and let the blood emanating from his wounds fall on her. She got up from the ground and told him, "I hope you die you son of a bitch." Dennis then went into his house and called 911. He reported that he had been stabbed by his sister and that he was bleeding badly.

Henry Miller testified that the defendant was his daughter and that Dennis was his adopted son. He shared a residence with his daughter. On the day in question, he was at Dennis' house mowing the lawn. When he was finished mowing the lawn, he took his lawn mower into the garage. When he came back out, the defendant and Dennis were arguing. Dennis said, "Watch out, she's got a knife with her." Henry further testified that he then took Dennis' lawn mower into the garage. When he came back out, he saw that Dennis had been stabbed and was bleeding out of his neck and back. Nobody

other than the defendant and Dennis were present at the time of the stabbing.

Assistant State's Attorney Terence Nader read into the record the evidence deposition of Richard Lind, M.D. Dr. Lind, a general surgeon, examined Dennis in the emergency room of Woodstock Memorial Hospital, in Woodstock, Illinois, following the stabbing. He noted there were five stab wounds along the left side of Dennis' body: one in the neck, three along the posterior left chest, and one along the lower left flank. The neck wound was approximately four centimeters in depth. One of the chest wounds punctured Dennis' lung, causing it to collapse. The three other stab wounds were less severe.

James Bald, a forensic scientist with the Illinois State Police Crime Laboratory, testified as to evidence obtained from the execution of a search warrant at the defendant's residence. He analyzed certain articles of clothing of the defendant and determined that they contained bloodstains inconsistent with the defendant's blood type, but consistent with Dennis' blood type. He also determined that blood from the driver's seat of the defendant's vehicle was inconsistent with the defendant's blood type, but consistent with Dennis' blood type.

The defendant testified on her own behalf. She testified that, prior to the police's arrival at her residence on the date in question, she had only been away from her house to purchase gas at a gas station in Marengo. She denied having been at her brother's residence that day. While she was being questioned by one of the officers, she had a petit mal seizure. She further testified that the physical evidence retrieved from her home was planted.

Dr. Meyer testified on behalf of the defendant. He testified that he had examined the defendant on several occasions and had examined past medical and psychiatric records pertaining to the defendant. He stated that the defendant had suffered a head injury after being thrown from a horse in 1969. That injury necessitated her having intracranial surgery. After that surgery, and as a result of the head trauma she suffered from the fall, she developed a seizure disorder. He explained that a person experiencing a seizure may not remember his or her actions because of the altered state of mind he or she experiences at the time.

On May 5, 1995, the jury returned a verdict of guilty but mentally ill on all charges. On June 12, 1995, defense counsel withdrew from the case and new counsel entered his appearance. The defendant filed an amended motion for a new trial, which was argued prior to the sentencing hearing on August 11, 1995, and denied. Following

arguments, the defendant was sentenced on the charge of attempted first degree murder to 25 years' imprisonment and fined $207. The defendant's motion to reconsider sentence was denied. She filed a timely appeal.

## ANALYSIS

On appeal, the defendant raises six issues for our review. She contends that (1) the armed violence conviction must be vacated because it violates the proscription against "double enhancement"; (2) the attempted first degree murder conviction must be reversed because the State failed to prove that she possessed the requisite intent beyond a reasonable doubt and because the trial court erred in failing to instruct the jury on the target crime (murder); (3) the armed violence and aggravated battery convictions must be vacated because they arose out of the same physical act as the attempted first degree murder conviction; (4) the sentence for attempted first degree murder should be reduced because the trial court considered improper aggravating factors; (5) she received the ineffective assistance of counsel; and (6) she is entitled to full credit for the $207 fine imposed.

The defendant initially contends that the armed violence conviction must be vacated because it violates the proscription against double enhancement.

■ The State asserts at the outset that this issue has been waived because the defendant failed to preserve the issue by raising it in her amended motion for a new trial. As a general rule, the failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Having reviewed the defendant's amended motion for a new trial, we agree with the State that the defendant failed to raise this issue below. While the motion for a new trial generically references improper jury instructions, it does not specify the particular defect now raised on appeal. Accordingly, we deem this issue waived. Had we not deemed this issue waived, we would, nevertheless, resolve the issue in favor of the State.

In *People v. Haron*, 85 Ill. 2d 261 (1981), battery (a misdemeanor) was enhanced to the felony of aggravated battery based on the use of a deadly weapon. The aggravated battery charge was then used as the predicate felony for an armed violence charge. The supreme court held that the presence of a weapon could not serve to enhance an offense from a misdemeanor to a felony and also serve as the predicate offense for a charge of armed violence. *Haron*, 85 Ill. 2d at 278. In *People v. Del Percio*, 105 Ill. 2d 372, 377 (1985), the supreme court held that *Haron* also applies when a predicate felony is doubly

enhanced because of the presence of a weapon. While a charge of armed violence (720 ILCS 5/33A—2 (West 1994)) may not be predicated on aggravated battery by use of a deadly weapon (720 ILCS 5/12—4(b)(1) (West 1994)), aggravated battery causing great bodily harm (720 ILCS 5/12—4(a) (West 1994)) is a proper predicate felony for the armed violence statute. See *People v. Drakeford*, 139 Ill. 2d 206, 213 (1990).

◼ The defendant argues that the double enhancement proscription has been violated here because (1) the charging instrument utilized language that indicates that the armed violence charge was predicated upon aggravated battery by use of a deadly weapon; and (2) the jury instructions permitted the jury to convict the defendant of armed violence predicated on aggravated battery by use of a deadly weapon. We examine each of these contentions.

A judgment on an armed violence charge may be reversed due to double enhancement on the face of the charge. See *People v. Hanson*, 138 Ill. App. 3d 530, 535 (1985). In the present case, count III of the indictment read as follows:

"That on or about June 25, 1994, in McHenry County, State of Illinois, SUSAN M. MILLER committed the offense of ARMED VIOLENCE, in that said defendant, while armed with a dangerous weapon, a knife with a blade longer than 3 inches, performed acts prohibited by Illinois Compiled Statutes, Chapter 720, Section 5/12—4(a), in that she knowingly and without legal justification stabbed Dennis Miller, thereby causing great bodily harm to Dennis Miller, in violation of Chapter 720, Section 5/33A—2 of the Illinois Compiled Statutes."

Contrary to the defendant's assertion, we do not find the charging instrument to reflect that the armed violence charge was predicated upon aggravated battery by use of a deadly weapon. Rather, the language evidences that it was properly predicated upon aggravated battery by way of great bodily harm. Not only does the indictment utilize "great bodily harm" language, but it also cites section 12—4(a) of the Criminal Code of 1961 (Criminal Code), which pertains to aggravated battery based on great bodily harm. See 720 ILCS 5/12—4(a) (West 1994). It does not cite section 12—4(b)(1) of the Criminal Code, which pertains to aggravated battery by use of a deadly weapon. See 720 ILCS 5/12—4(b)(1) (West 1994). We conclude that the charging instrument did not violate the proscription against double enhancement.

◼ The defendant also contends that, because the jury instructions did not limit the jury to consideration solely of aggravated battery based upon great bodily harm as the predicate for the armed

violence charge, the jury might very well have considered the predicate felony to be aggravated battery based upon the use of a deadly weapon in contravention of *Haron*, 85 Ill. 2d 261. The defendant insists that her conviction of armed violence cannot stand because the jury's verdict did not indicate whether the underlying felony of aggravated battery was based on the theory that she had used a deadly weapon or on the theory that she had caused great bodily harm.

We note that the defendant did not object to the jury instructions at trial and her motion for a new trial did not identify the particular instruction at issue as erroneous. Additionally, she did not tender any alternative instructions to the court. Each of these failures is fatal to the preservation of the issue for appellate review. *People v. Thurman*, 104 Ill. 2d 326, 329 (1984); *People v. Berry*, 99 Ill. 2d 499, 503 (1984). Supreme Court Rule 451(c), however, allows for the excusal of the waiver doctrine if "substantial defects" in the instructions are alleged. See 134 Ill. 2d R. 451(c). In light of the defendant's allegations, we will review her contention on the merits.

Here, the instruction for armed violence read as follows:

"To sustain the charge of Armed Violence, the State must prove the following propositions:

First: That the defendant committed the offense of Aggravated Battery; and,

Second: That when she committed the offense of Aggravated Battery she was armed with a dangerous weapon."

As such, the instruction fails to limit the jury to consideration solely of aggravated battery based upon great bodily harm as the predicate for the armed violence charge. We therefore find the jury instruction to have been improper. Nevertheless, because we find such error to have been harmless, we find no basis for reversal of the armed violence conviction. Here, the jury signed separate verdict forms finding the defendant guilty of aggravated battery based upon great bodily harm and of aggravated battery based upon the use of a deadly weapon. The jury therefore explicitly found that the defendant committed aggravated battery based upon great bodily harm. This finding establishes that the jury found facts forming a proper basis for the armed violence conviction. See *People v. Damnitz*, 269 Ill. App. 3d 51, 62 (1994). Thus, the conviction of armed violence will not be vacated on the grounds that the jury instructions were improper.

The second contention of the defendant on appeal is that the attempted first degree murder conviction must be reversed because the State failed to prove that she possessed the requisite intent beyond a reasonable doubt and because the trial court erred in failing to instruct the jury on the target crime (murder).

■ A conviction must be based upon proof beyond a reasonable doubt. *People v. Foules*, 258 Ill. App. 3d 645, 653 (1993). The reviewing court's duty is not to ask itself whether it believes the evidence establishes guilt, but whether the evidence viewed in a light most favorable to the prosecution would allow any rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt. *Foules*, 258 Ill. App. 3d at 653. A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Winfield*, 113 Ill. App. 3d 818, 826 (1983). The reversal of a conviction is required only where the defendant can show that the evidence is so unsatisfactory or improbable as to create a reasonable doubt of the defendant's guilt. *People v. Murray*, 194 Ill. App. 3d 653, 656 (1990).

The defendant first argues that the attempted first degree murder conviction must be reversed because the State failed to prove beyond a reasonable doubt that she acted with the specific intent to kill Dennis.

■ A defendant's specific intent to kill is an essential element of the offense of attempted murder, and it must be proved beyond a reasonable doubt. *People v. Okundaye*, 189 Ill. App. 3d 601, 606 (1989). The specific intent to kill may be inferred from the surrounding circumstances, including the character of the assault upon the victim, the use of a deadly weapon, and other relevant matters. *People v. Treadway*, 138 Ill. App. 3d 899, 902 (1985).

In the case at bar, the defendant approached Dennis with a knife and stabbed him in the neck. After she was knocked to the ground, she came back at him and stabbed him four more times. One of the later stabs punctured Dennis' lung. Before leaving the scene of the incident, the defendant told Dennis, "I hope you die you son of a bitch." The inescapable conclusion to be drawn from the defendant's conduct in the present case is that she acted with the specific intent to kill her brother.

The defendant cites *People v. Jones*, 184 Ill. App. 3d 412 (1989), and *People v. Thomas*, 127 Ill. App. 2d 444 (1970), for the proposition that the evidence may be insufficient to sustain a conviction of attempted murder despite grave injuries to the victim. Those cases are distinguishable from the case at hand. In *Jones*, the defendants beat the victim with a gun. The court noted that the defendants had a gun and a knife but did not use the knife or fire the gun. The court therefore concluded that the character of the attack was not the type that justified an inference of an intent to kill. *Jones*, 184 Ill. App. 3d at 430. Here, the defendant possessed and used a knife, thus evidenc-

ing an intent to kill. In *Thomas*, the defendant attacked the victim with a knife but only stabbed her in the shoulder. In this case, by contrast, the stabbings were more serious, having been directed to the neck and to the chest.

The defendant additionally argues that the attempted first degree murder conviction must be reversed because the trial court erred in failing to instruct the jury on the target crime (murder).

■ We note that the defendant did not object to the instructions at trial and her motion for a new trial did not raise this issue. These failures are fatal to the preservation of the issue for appellate review. *Thurman*, 104 Ill. 2d at 329; *Berry*, 99 Ill. 2d at 503. Supreme Court Rule 451(c), however, allows for the excusal of the waiver doctrine if "substantial defects" in the instructions are alleged. See 134 Ill. 2d R. 451(c). In light of the defendant's allegations, we will review her contention on the merits.

Here, the trial court instructed the jury on "attempt," but did not instruct the jury on the target crime, "murder." Citing *People v. Kraft*, 133 Ill. App. 3d 294 (1985), the defendant maintains that the trial court erred in not instructing the jury on murder. In *Kraft*, the Appellate Court, First District, stated:

> "However, problems have arisen in the past from the fact that in an attempted murder trial the jurors must be instructed not only on the crime of attempt [citation] but also on the target crime attempted, here murder ([citation]; *People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446)." *Kraft*, 133 Ill. App. 3d at 298-99.

We decline to follow *Kraft* because we find its interpretation of *Koshiol* as requiring instruction on the target crime murder in an attempted murder case to be flawed. In *Koshiol*, the issue was whether the trial court erred in instructing the jury on the target crime murder where the defendant was charged with attempted murder. The supreme court found no error in the instruction already given. It did not state that the failure to give such an instruction would constitute reversible error. See *Koshiol*, 45 Ill. 2d at 579. We therefore find no error in the trial court's having failed to instruct the jury on "murder."

The defendant argues that, without the murder instruction, the jury lacked instruction on the requisite culpable mental state for attempted murder. We disagree. Here, the trial court instructed the jury on "attempt murder," and such instruction included the requirement that to sustain the charge of attempted first degree murder the State had to prove not only "[t]hat the defendant performed an act which constituted a substantial step toward the killing of an individual" but also "[t]hat the defendant did so with the intent to kill the individual."

■ The defendant further argues that the trial court improperly allowed the prosecutor to misstate the culpable mental state required where the charge is attempted murder. During direct examination of Dr. Lind, the prosecutor asked Dr. Lind what would have occurred had the victim's carotid artery been severed. Defense counsel objected on speculation grounds. The prosecutor replied:

> "Given the proximity of this wound so close to the carotid I think it is important for the jury to understand the significance of the wound and also it reflects the intent to kill. I believe it bears on whether or not this injury caused serious bodily injury, great bodily harm whether it could have, whether it could have resulted in death."

The defendant argues that the prosecutor's remarks may have misled the jury and predisposed the jury to find her guilty of attempted murder even though it believed her only intent was to inflict great bodily harm. We disagree. The prosecutor clearly referenced the requisite state of mind necessary for a conviction of attempted murder, intent to kill. The additional verbiage of the prosecutor merely related to one of the aggravated battery charges against the defendant.

■ The third contention of the defendant on appeal is that the armed violence and aggravated battery convictions must be vacated because they arose out of the same physical act as the attempted first degree murder conviction.

In Illinois, it is well established that multiple convictions of both armed violence and the underlying felony cannot stand where a single physical act is the basis for both charges. *People v. Massey*, 219 Ill. App. 3d 909, 912 (1991). However, when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered. *People v. King*, 66 Ill. 2d 551, 566 (1977).

In this case, the defendant stabbed her victim five times within a brief period of time. Initially, she stabbed Dennis in the neck. After having been knocked to the ground, she came at him again and stabbed him four more times as they struggled. The defendant argues that the stabbings constituted a single physical act that could lead only to one conviction. The State, on the other hand, argues that each stabbing was a separate act that could lead to multiple convictions.

We find this issue to be controlled by the outcome in *People v. Mayes*, 257 Ill. App. 3d 137 (1993). In *Mayes*, the defendant stabbed the victim three times in the back and once in the forearm during a

struggle that lasted several minutes. When presented with the identical issue of whether each of the stab wounds constituted separate acts or all of the stab wounds together constituted the same physical act, the Appellate Court, First District, concluded that multiple stabs constituted separate acts that could support separate convictions. *Mayes*, 257 Ill. App. 3d at 154. Accordingly, we find the defendant's actions in this case constituted separate acts that could support separate convictions.

The defendant argues that, even if this court finds the stabbings to have constituted separate acts, her aggravated battery convictions must be vacated because they are lesser included offenses of attempted murder. We disagree.

■ One offense is a lesser included offense only if all of its elements are entirely included in the greater offense. *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182 (1932). Under the *Blockburger* standard, aggravated battery cannot be considered a lesser included offense of attempted murder because all of the elements of aggravated battery are not encompassed in the offense of attempted murder. See *Mayes*, 257 Ill. App. 3d at 155. Even if aggravated battery could be a lesser included offense of attempted murder when based on the same physical act, such would not be the case where, as here, each offense can be attributed to a separate act. One stab wound can support the attempted murder conviction, and others can support the aggravated battery convictions.

A fourth contention of the defendant on appeal is that the 25-year sentence for attempted first degree murder should be reduced to the minimum 6-year sentence because the trial court considered improper aggravating factors.

■ A trial court is vested with considerable discretion in imposing a sentence, and a sentence consequently will not be modified on appeal in the absence of an abuse of that discretion. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992). For a reviewing court to modify a sentence within the statutory limits, it must appear to the reviewing court that the sentence imposed is a clear departure from the spirit and purpose of the fundamental law and the constitutional requirement that the sentence be proportionate to the nature of the offense. *People v. Luna*, 234 Ill. App. 3d 544, 550 (1992). A sentence is presumptively correct, and only where such a presumption has been rebutted by an affirmative showing of error will a reviewing court find that the trial court has abused its discretion. *Luna*, 234 Ill. App. 3d at 550-51.

In the case at hand, the defendant was convicted of attempted first degree murder, a Class X felony. See 720 ILCS 5/8—4(c)(1) (West

1994). The possible range for a Class X felony is a term of imprisonment not less than 6 years and not more than 30 years. (730 ILCS 5/5—8—1(a)(3) (West 1994)). The defendant was sentenced to 25 years' imprisonment.

■ In its judgment order, the trial court noted the following aggravating factors: (1) that the defendant inflicted or attempted to inflict serious bodily injury to another person; and (2) that the sentence was necessary to deter others from committing the same crime. The defendant takes issue with each of these factors. We note that the defendant failed to interpose a timely objection at the sentencing hearing for what she now contends were improper sentencing considerations. As such, the issue has been waived. See *People v. Russell*, 143 Ill. App. 3d 296, 304 (1986). Had we not deemed the issue waived, we would decide this issue in favor of the State.

The defendant first asserts that the trial court improperly considered as an aggravating factor that the defendant inflicted or attempted to inflict serious bodily injury to another person because it is implicit within the offense for which she was charged, aggravated battery causing great bodily harm. We cannot agree. The severity of sentence depends upon the degree of harm caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, even in cases where serious bodily harm is arguably implicit in the offense of which a defendant is convicted. *People v. Saldivar*, 113 Ill. 2d 256, 269 (1986).

The defendant next asserts that the trial court improperly considered as an aggravating factor that the sentence was necessary to deter others from committing the same crime because the defendant was found mentally ill and the sentence could not possibly deter others who are mentally ill from committing such acts. In support of her assertion, the defendant cites *People v. Martin*, 119 Ill. 2d 453 (1988). In *Martin*, the trial court considered as an aggravating factor at sentencing that the sentence was necessary to deter others. The supreme court found that factor to have marginal applicability to the circumstances surrounding the offense because the defendant was convicted of involuntary manslaughter. Finding it is exceedingly difficult to deter unintentional conduct, the supreme court stated that an enhanced penalty would have very little, if any, deterrent effect on potential offenders. *Martin*, 119 Ill. 2d at 459. *Martin* is distinguishable from the case at hand, which involved intentional conduct by the defendant. Moreover, the defendant cites no authority for the proposition that a trial court is prohibited from considering the deterrence factor in sentencing a defendant who is found guilty but mentally ill.

In this case, the trial court was in a superior position during the course of the trial and the sentencing hearing in aggravation and mitigation to make a sound determination regarding punishment. The record reflects that the defendant's conduct caused the victim substantial harm through the infliction of a total of five knife wounds. The sentence imposed was well within the legislative limitations. We find that there was no abuse of discretion by the trial court in sentencing the defendant to 25 years' imprisonment.

The fifth contention of the defendant on appeal is that she received the ineffective assistance of counsel.

A defendant is entitled to competent legal assistance, not perfect representation. *People v. Hooker*, 253 Ill. App. 3d 1075, 1082 (1993). There is a strong presumption that counsel's performance at trial was competent. *Hooker*, 253 Ill. App. 3d at 1082. Mistakes in trial strategy or tactics or in judgment do not of themselves render the representation incompetent. *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988). Trial counsel's representation must be deemed effective unless counsel's performance is both defective and prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). A defendant claiming he was denied the effective assistance of counsel must demonstrate that defense counsel's conduct was professionally deficient or objectively unreasonable and a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *People v. Gwinn*, 255 Ill. App. 3d 628, 632 (1994).

Here, the alleged instance of ineffective assistance of defense counsel is the failure to pursue the alibi defense offered by the defendant. The defendant claims to have been absent from the scene of the crime. She claims to have gone to a nearby gas station on the day in question, opening the possibility that she was at the station at the time of the incident. When defense counsel initially explored this alibi defense, he learned that the station records pertaining to the date in question had been destroyed as was customarily done by the business every 30 days. The defendant claims that the records could have demonstrated her whereabouts on the date and time in question and that her counsel was ineffective for not securing the records before they were destroyed and for not presenting the alibi defense. We find the defendant's contention to be wholly without merit.

In this case, the subject attack was witnessed by the victim and the father of both the victim and the defendant. They each identified the defendant as the perpetrator. Nevertheless, the defendant claims to have been absent from the scene. A conviction may rest upon the testimony of a single witness, if positive and credible, even though

his testimony is contradicted by the accused. *Murray*, 194 Ill. App. 3d at 656. Furthermore, the victim's blood was found in the defendant's vehicle and on her clothing. In light of this eyewitness testimony and physical evidence, we find that defense counsel's representation of the defendant was not defective for his having elected not to pursue the defendant's alleged alibi defense. Accordingly, we find no ineffective assistance of counsel.

▉ The final contention of the defendant on appeal is that, under section 110—14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110—14 (West 1994)), she is entitled to a $5-per-day credit against the $207 fine imposed upon her for the 403 days of incarceration she served prior to sentencing. She argues that she is entitled to a full credit against the fine. The State argues that the defendant has waived her right to any credit by failing to request it in the proceedings below.

Prior to January 1, 1994, section 110—14 required the clerk of the court to provide defendants with notice of their eligibility for the $5-per-day credit at the time of conviction. See 725 ILCS 5/110—14 (West 1992). In cases where the clerk failed to notify the defendant of the credit entitlement, the defendant's failure to seek the credit at the trial level or in a post-trial motion did not preclude the raising of the issue on appeal. See *People v. Sinnott*, 226 Ill. App. 3d 923, 935 (1992); *People v. Joseph*, 176 Ill. App. 3d 636, 642 (1988).

Here, the defendant argues that she cannot be precluded from raising the credit entitlement issue on appeal because she was not informed by the circuit clerk of its availability. This argument must fail, because effective January 1, 1994, the notification requirement was deleted from section 110—14. See 725 ILCS 5/110—14 (West 1994).

Citing *People v. Toolate*, 274 Ill. App. 3d 408 (1995), the State argues that the defendant waived her right to any credit by failing to seek it at time of sentencing. In *Toolate*, the Appellate Court, Fourth District, held that, in light of the January 1, 1994, amendment eliminating the circuit clerk's duty to notify defendants of the credit, normal rules of waiver should apply to this issue. *Toolate*, 274 Ill. App. 3d at 409. Other panels of the appellate court have declined to follow *Toolate*, opting instead to grant the credit despite the failure to raise the issue below. See *People v. Scott*, 277 Ill. App. 3d 565, 566 (3d Dist. 1996); *People v. Woodard*, 276 Ill. App. 3d 242, 247-48 (5th Dist. 1995). These cases reasoned that, because the defendants had a clear statutory right to the credit and granting it was simply a ministerial act, there was no reason to deny the credit. See *Scott*, 277 Ill. App. 3d at 566; *Woodard*, 276 Ill. App. 3d at 247-48. In a recent deci-

sion of this court, we too declined to follow *Toolate*. See *People v. Siedlinski*, 279 Ill. App. 3d 1003 (1996). Although our reasoning differed from that of the *Scott* and *Woodward* courts, we too refused to deny a defendant's request, made for the first time on appeal, for the $5-per-day credit for days served prior to sentencing. In keeping with our decision in *Siedlinski*, we determine that the defendant is entitled to full credit against the $207 fine imposed upon her for time served prior to sentencing.

## CONCLUSION

For the foregoing reasons, we affirm the defendant's convictions and sentence, but award her full credit against the $207 fine.

Affirmed as modified.

McLAREN, P.J., and INGLIS, J., concur.