THIRD DIVISION
August 20, 2008

No. 1-06-1628

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 8133 |
| | ) | |
| ROOSEVELT BILLUPS, JR., | ) | Honorable |
| | ) | James D. Egan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Roosevelt Billups was found guilty of disorderly conduct and sentenced to two years' imprisonment. On appeal, defendant challenges the sufficiency of the evidence to sustain his conviction. He specifically contends that the State failed to establish the concealment element of the disorderly conduct charge and, accordingly, that his conviction should be reversed.

At trial, the parties stipulated that Cynthia McCall would testify that about 11:45 a.m., on March 18, 2005, she was an operator at the Chicago 911 center and received a phone call from a cell phone identified as "312-730-7369." McCall would further testify that she listened to a tape recording of that call and verified that it was an accurate recording of the conversation. That tape recording was played in court, and the relevant portions of it are as follows:

"DISPATCHER: You gonna blow up what?

DEFENDANT: City Hall ***.

* * *

DISPATCHER: Do you have a bomb there?  At Mt. Sinai?  How you gonna blow it up?

DEFENDANT: Natural gas.

* * *

DISPATCHER: Where you gonna put the natural gas at?

DEFENDANT: Right where I said.  Right off Lake Michigan.  Lake Michigan is full of natural gas.

DISPATCHER: You gonna blow up City Hall with natural gas?

DEFENDANT: Yep.

* * *

DEFENDANT:  I'm going to blow up City Hall."

The parties also stipulated that, if bomb and arson explosive technician Gavin were called, he would testify that on March 18, 2005, he was assigned to the bomb and arson unit of the Chicago police department and called upon to investigate the 911 call in question.  During the course of his investigation, he dialed "312-730-7369" and conversed with "Bishop Roosevelt, Jr. Billups," who stated that he lived at 2440 West Flournoy Street.  Gavin would also testify that Billups told him that he was on a bus to Cuba at the time of their conversation.

Detective Anthony Kubisnv testified that he was assigned to the Chicago police bomb and arson unit, and on the night of March 18, 2005, he began working with Detective Schall investigating a bomb threat to City Hall.  Detective Kubisnv testified that he was searching for "Roosevelt Billups" who lived at 2440 West Flournoy Street.  He and Detective Schall arrived at that location in the early morning hours of March 19, 2005, and spoke with defendant, who agreed to accompany them to the bomb and arson office.  There, defendant told Detective Kubisnv that he called the 911 center stating that the president, mayor, and Janet Reno were all

going to die and that God was going to kill them. Defendant also indicated that he told the 911 operator that he was going to blow up City Hall. Detective Kubisnv testified that he knew that City Hall was checked for explosives, but none were found.

Defendant testified on his own behalf that from March 6 through March 17, 2005, he was at Mount Sinai Hospital receiving medication. He was discharged on March 17, 2005, without medication, and returned to the hospital the following day in an unsuccessful attempt to obtain it. Defendant admitted that he made the 911 call, but stated that he had no plans to blow up City Hall. He explained that he "was going to use the natural gas in [his] bodily functions as far as a fart to blow all the criminal justices out of the City Hall."

The parties then stipulated to defendant's prior felony conviction for threatening a public official. Following evidence and argument, the trial court found that there were no reasonable grounds to believe a bomb or explosive was concealed in the designated place. The trial court then stated the 911 call was a false alarm and that the State had proved defendant guilty of disorderly conduct beyond a reasonable doubt.

On appeal, defendant challenges the sufficiency of the evidence to sustain his conviction. He specifically maintains that a review of the 911 tape establishes that he never threatened to blow up City Hall with natural gas that was concealed in City Hall, but instead threatened to blow it up at some unknown time with natural gas that was stored in Lake Michigan. Defendant therefore posits that the State failed to establish the concealment element of the offense of disorderly conduct and this court should reverse his conviction.

Where, as here, defendant challenges the sufficiency of the evidence to sustain his conviction, the question for the reviewing court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Brooks, 187 Ill. 2d 91, 132 (1999). This

standard recognizes the responsibility of the trier of fact to assess witness credibility, to weigh the evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the testimony. People v. Campbell, 146 Ill. 2d 363, 375 (1992). A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. People v. Cox, 195 Ill. 2d 378, 387 (2001).

To sustain defendant's conviction for disorderly conduct under section 26-1(a)(3) of the Criminal Code of 1961 (Code) (720 ILCS 5/26-1(a)(3) (West 2004)), the evidence must establish that he transmitted or caused to transmit to another a false alarm to the effect that a bomb or other explosive was concealed in such place, that its explosion would endanger human life, while also knowing at the time of the transmission that there was no reasonable ground for believing that a bomb or explosive was concealed in such place.

Viewed in the light most favorable to the prosecution, the evidence showed that defendant made a false alarm call to 911 where he stated he was going to "blow up" City Hall with natural gas. The stipulated testimony showed that the 911 operator identified the call number as "312-730-7369," and that Detective Gavin called that number and conversed with defendant, who answered. Thereafter, defendant admitted to Detective Kubisnv that he made a phone call to City Hall and threatened to "blow up City Hall." Detective Kubisnv further testified that a check for explosives was made at City Hall, but none were found. This evidence was sufficient to prove beyond a reasonable doubt that defendant transmitted a false alarm that he was going to blow up City Hall with natural gas knowing at the time of the transmission that none was concealed in the designated place, thereby establishing his guilt of disorderly conduct. People v. McDole, 48 Ill. App. 3d 663, 665 (1977).

Defendant contends, nevertheless, that the State failed to establish the concealment element of the offense. Defendant compares the case at bar to McDole, 48 Ill. App. 3d at 664,

where defendant was found guilty of disorderly conduct for calling a corporation and saying, " 'The bomb will go off at 2 o'clock.' " Defendant argues that McDole is an example of an imminent threat from which one could infer that a bomb was concealed on the premises. Defendant maintains that this case is dissimilar from McDole because, here, the State presented no evidence that he told the dispatcher that he had concealed natural gas in City Hall or that she believed that defendant had communicated an imminent threat. Thus, although his threat was a false alarm, it did not constitute disorderly conduct. We disagree.

Although defendant did not specify a time when the explosion was to take place and his responses to the dispatcher were rambling, we find, similar to McDole, that the court could reasonably find that defendant's statements over the telephone were sufficient to imply, and the recipient did so infer, that an explosive was concealed on the designated premises. McDole, 48 Ill. App. 3d at 665; see also People v. Banuelos, 345 Ill. App. 3d 970, 973 (2004) (commenting that words used in conveying a false alarm that raise the belief that a device is concealed are sufficient to show disorderly conduct). The transcript shows that defendant made repeated references to the target as City Hall, and evidence was presented at trial that City Hall was checked for explosives in response to defendant's call. As such, we conclude that defendant's words were sufficient to fall under the ambit of prohibited conduct under the disorderly conduct statute.

Accordingly, we affirm the judgment entered by the circuit court of Cook County.

Affirmed.

CUNNINGHAM, J., concurs.

GREIMAN, J., specially concurs.

No. 1-06-1628

JUSTICE GREIMAN, specially concurring:

I concur with the majority opinion although I am reasonably certain we will see this case again.

A matter of significant interest is that the defendant was hospitalized for his mental problem from March 6 to March 17, 2005, and received medication for his ailment. He was discharged on March 17, 2005, and returned to the hospital the following day and was unsuccessful in securing his needed medication. It was on the following day he made the telephone call which is the basis of his conviction.

The record shows how strange this defendant was when he spoke of blowing up City Hall with "natural gas" because he can get the gas "right off Lake Michigan. Lake Michigan is full of natural gas."

In his testimony at trial, he suggests he will do all of this with a fart and that he was "going to use the natural gas in [his] bodily functions as far as a fart to blow all the criminal justices out of the City Hall."

Clearly, defendant's mental status should be of great concern to defense counsel, and counsel has two options where the issue of mental capacity can be seriously advanced.

First, defendant may assert an insanity defense at trial. Secondly, defendant can present evidence at the fitness hearing as to his competence to stand trial. In the case at bar, defense counsel did neither.

It would seem that a person hospitalized for mental problems, placed on serious medication and denied that medication might have an insanity defense that might be raised. People v. Murphy, 160 Ill. App. 3d 781 (1987); People v. Morgan, 187 Ill. 2d 500 (1999).

In Morgan, defense counsel failed at the capital sentencing phase to present mitigating evidence of defendant's organic brain damage. While affirming the conviction, the Illinois Supreme Court vacated the death sentence pursuant to Strickland v. Washington, 466 U.S. 668,

80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), on the theory that failure to advance such a defense fell below a standard of reasonableness.

Clearly a defendant must satisfy both prongs of a <u>Strickland</u> test before he can prevail on a claim of ineffective assistance of counsel. Certainly there are serious implications in the record that defendant could have proceeded with an insanity defense.

The record, however, is not sufficient for us to make that determination but one would assume that a postconviction proceeding will be filed hereafter which would allow the trial court to determine whether the proceedings were unreliable in the adversarial process by failure of defendant to assert an insanity defense.

In such postconviction proceedings, the State will assert that his mental condition was known at the time of the appeal and failure to assert same is a waiver of this issue. Perhaps we have a double <u>Strickland</u>.

The second issue relates to defendant's fitness to stand trial.

The record discloses that defendant asked for a behavioral clinical evaluation. Thereafter the trial court received a letter from Forensic Clinical Services which stated "defendant is fit to stand trial with medication." After receiving the letter from Forensic Clinical Services, defendant's counsel took no action to challenge the ruling as to defendant's fitness to stand trial.

In <u>People v. Lucas</u>, 140 Ill. App. 3d 1 (1986), a case which is similar to the case at bar, a written report by a clinical physician stating that defendant was fit to stand trial was filed in court and a contested hearing followed. In the case at bar defense counsel did not challenge the behavioral clinic's evaluation. In <u>Lucas</u>, the court found defendant fit to stand trial; however, only after a serious hearing with respect to that issue and a determination as to which party has the burden of proof.

No. 1-06-1628

Again, the appeal does not raise this issue directly and perhaps a serious <u>Strickland</u> issue will be raised at the post-conviction level.

Sadly, people with mental illness often descend into darkness and issues of insanity or fitness for trial are most difficult for counsel to analyze.

However, what little is in the record gives us pause in this regard and it is for this reason that I attempt to establish the next phase of these proceedings.

CUNNINGHAM, J., joins in this special concurrence.